STATE of Wisconsin, Plaintiff-Appellant,

v.

CITY OF GREEN BAY, a municipal corporation,
Defendant-Respondent-Petitioner.†

Supreme Court

*No. 77–440.  Argued March 31, 1980.—Decided May 6, 1980.*

(Also reported in 291 N.W.2d 508.)

† Motion for reconsideration denied, without costs, on June 9, 1980.

For the respondent-petitioner the cause was argued by *Richard J. Dietz,* attorney for the city of Green Bay, with whom on the briefs was *Mark A. Warpinski,* assistant attorney for the city of Green Bay.

For the appellant the cause was argued by *Nancy L. Arnold,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This case is a review of an unpublished decision of the court of appeals,

*State of Wisconsin v. City of Green Bay* (December 8, 1978), which affirmed in part and reversed in part a judgment entered by the circuit court for Brown county, the Honorable William J. Duffy, circuit judge.

The State of Wisconsin commenced this action in August, 1974, against the City of Green Bay seeking an injunction to enforce four amended orders issued by the Department of Natural Resources (DNR) concerning certain solid waste disposal facilities and seeking forfeitures for failure to comply with these orders by July 1, 1974. Two issues were presented to the circuit court. The first related to alleged violations with respect to maintenance of certain landfill sites by the City of Green Bay. The second related to alleged violations with respect to closing and abandoning certain landfills and an incinerator in accordance with orders of the Wisconsin Department of Natural Resources.

In its memorandum decision dated April 11, 1977, the circuit court determined that the city violated DNR orders relating to maintenance of the landfill site on 20 separate occasions, and the judgment imposed a forfeiture pursuant to sec. 144.57, Stats.,[1] of $15 per violation for a total forfeiture of $300. The circuit court refused to impose any forfeiture for the city's failure to close down landfill sites and an incinerator by July 1, 1974, because the circuit court concluded that the state was estopped from claiming these forfeitures.

The award of the $300 forfeiture was not challenged on appeal, and the court of appeals affirmed that part of the judgment. The court of appeals reviewed the record and determined that estoppel was not proved in this

---

[1] Sec. 144.57, Stat., provides:

144.57 **Penalties.** Any person who violates this chapter, or who fails, neglects or refuses to obey any general or special order of the department, shall forfeit not less than $10 nor more than $5,000, for each violation, failure or refusal. Each day of continued violation is a separate offense. While the order is suspended, stayed or enjoined, such penalty shall not accrue.

case. The court of appeals remanded the case to the circuit court to impose a forfeiture for 2,957 days of violation of the closure orders within the statutory range provided in sec. 144.57, Stats. ($10 to $5,000 per day for each day of violation) and instructed the circuit court to impose a forfeiture of at least $29,570. We granted the City of Green Bay's petition for review of the decision of the court of appeals. We conclude that the circuit court's finding that the state was estopped from claiming forfeitures for Green Bay's failure to close down landfill sites and an incinerator by July 1, 1974, is not contrary to the great weight and clear preponderance of the evidence, and that the judgment of the circuit court should be affirmed.

For purposes of this action it is sufficient to summarize the proceedings in the circuit court as follows: One DNR order (June, 1972) required Green Bay to close an incinerator prior to October 1, 1972, or upgrade its operation to comply with DNR rules by July 1, 1973, and three DNR orders (March, 1973) required Green Bay to close three solid waste disposal sites on or before September 30, 1973. Pursuant to an "informal enforcement conference," held on October 10, 1973, and followed by a letter from the DNR on October 16, 1973, the time for the city's compliance with all four orders was extended to July 1, 1974. Green Bay did not seek administrative or judicial review of the orders. One disposal site was used by Green Bay until March 21, 1976, and the incinerator and other two disposal sites were utilized until August 16, 1976. Thus, that part of this action seeking injunctions had become moot by the time of the circuit court judgment.

In its amended answer to the state's complaint, Green Bay raised the affirmative defense of estoppel.[2] Green

---

[2] Estoppel is sometimes referred to as "equitable estoppel" or "estoppel *in pais*." These terms are distinguished from legal estoppels, such as estoppel by judgment or estoppel by deed. Black's Law Dictionary, 494–495, 483, 710–711, 1170 (5th ed. 1979).

Bay's answer alleged that during the period involved in the complaint, the DNR and Brown County (in which the City of Green Bay is located) were actively engaged in planning for a county waste disposal system for use by the county and municipalities on a regional basis; that Brown County had applied to the DNR for the necessary approval and licensing of such sites; that on September 17, 1974, the Green Bay city council entered into a joint municipal corporation contract with Brown County whereby Green Bay would participate in and use the facilities developed by Brown County; that the DNR had made representations to the county and the city relating to the probability of approval and licensing of the county system by the DNR; that the DNR because of its own negligence by inaction failed to approve the license of the proposed county sites by July 1, 1974; that the city had relied upon representations made by DNR to it and to the county; and that the city had refrained from taking any other course of action to develop alternate sites. The state demurred to the affirmative defense of estoppel on the ground that it appeared on the face of the amended answer that it did not state facts sufficient to constitute the defense. The trial court in a lengthy memorandum decision reviewed the facts stated in the answer and the law of estoppel and overruled the demurrer. A trial ensued, and the circuit court entered the judgment previously described.

The state argued before the court of appeals, and argues here, that the city cannot assert an estoppel defense in this forfeiture action, because the city's exclusive method for obtaining review of the DNR order was under ch. 227, Stats., and the time for a ch. 227 review has expired.[3] We agree with the court of appeals that

[3] The state relies on secs. 144.56, 227.15, 227.16, Stats. Sec. 144.56 provides:

"Review of orders. Any owner or other person in interest may secure a review of the necessity for and reasonableness of any order of the department of natural resources in the following manner:

the city can assert an estoppel defense in this forfeiture action. The city is not challenging the validity of the DNR orders;[4] the city is raising a defense which is based on DNR conduct occurring both before and after the orders were issued. The defense of estoppel is not necessarily one which would have been available to the city on judicial review of the DNR orders.

The state concedes that if the city may raise the defense of equitable estoppel in the forfeiture proceeding,

"(1) They shall first file with the department a verified petition setting forth specifically the modification or change desired in such order. Such petition must be filed within 60 days of the issuance of the orders sought to be reviewed. Upon receipt of such a petition the department shall order a public hearing thereon and make such further investigations as it shall deem advisable. Pending such review and hearing, the department may suspend such orders under terms and conditions to be fixed by the department on application of any such petitioner. The department shall affirm, repeal or change the order in question within 60 days after the close of the hearing on the petition.

"(2) The determination of the department shall be subject to review as provided in ch. 227."

Sec. 227.15, Stats., provides:

"Administrative decisions which directly affect the legal rights, duties, or privileges of any person, whether affirmative or negative in form . . . shall be subject to judicial review as provided in this chapter . . . ."

Sec. 227.16(1), Stats., provides:

"Except as otherwise specifically provided by law, any person aggrieved by a decision specified in sec. 227.15 and directly affected thereby shall be entitled to judicial review thereof as provided in this chapter . . . ."

[4] Professor Davis notes that:

One of the most-used means of challenging administrative action is by resisting enforcement—by defending proceedings brought to enforce the administrative action. . . . In general, a defendant in a civil or criminal proceeding brought to enforce an administrative order or regulation may defend on the ground of invalidity of the order, or regulation, in absence of affirmative legislative input to the contrary." 3 *Administrative Law Treatise*, sec. 23.07, pp. 317, 320 (1958).

This issue, however, is not before us.

then the defense of equitable estoppel if proved, is available against governmental entities. In *Department of Revenue v. Moebius Printing Co.*, 89 Wis.2d 610, 638–41, 279 N.W.2d 213 (1979), this court summarized the application of the defense of equitable estoppel against governmental entities as follows:

"We have frequently said that 'the doctrine of estoppel is not applied as freely against governmental agencies as it is in the case of private persons.' *Libby, McNeill & Libby v. Dept. of Taxation, supra*, 260 Wis. at 559.

"Courts have recognized 'the force of the proposition that estoppel should be applied against the Government with utmost caution and restraint, for it is not a happy occasion when the Government's hands, performing duties in behalf of the public, are tied by the acts and conduct of particular officials in their relations with particular individuals.' *Schuster v. CIR*, 312 F.2d 311, 317 (9th Cir. 1962). Nevertheless we have recognized that estoppel may be available as a defense against the government if the government's conduct would work a serious injustice and if the public's interest would not be unduly harmed by the imposition of estoppel. *Park Bldg. Corp. v. Industrial Comm.*, 9 Wis.2d 78, 87, 100 N.W.2d 571 (1960). *See also United States v. Lazy FC Ranch*, 481 F.2d 985, 989 (9th Cir. 1973); Comment, *Emergence of an Equitable Doctrine of Estoppel Against the Government—The Oil Shale Case*, 46 U. Colo. L. Rev. 433 (1974–75); Annot., *Modern Status of Applicability of Doctrine of Estoppel Against Federal Government and Its Agencies*, 27 A.L.R. Fed. 702 (1976). In each case the court must balance the injustice that might be caused if the estoppel doctrine is not applied against the public interests at stake if the doctrine is applied.

"We have not allowed estoppel to be invoked against the government when the application of the doctrine interferes with the police power for the protection of the public health, safety or general welfare. *State v. Chippewa Cable Co.*, 21 Wis.2d 598, 608, 609, 124 N.W.2d 616 (1963); *Park Bldg. Corp. v. Ind. Comm.*, 9 Wis.2d 78, 87, 88, 100 N.W.2d 571 (1960); *Town of Richmond v. Murdock*, 70 Wis.2d 642, 653, 654, 235 N.W.2d 497 (1975); *McKenna v. State Highway Comm.*, 28 Wis.2d 179, 186,

135 N.W.2d 827 (1965); *Milwaukee v. Milwaukee Amusement, Inc.*, 22 Wis.2d 240, 252–53, 125 N.W.2d 625 (1964).

". . .

"We conclude that where a party seeks to estop the Department of Revenue and the elements of estoppel are clearly present, the estoppel doctrine is applicable where it would be unconscionable to allow the state to revise an earlier position. *Libby, McNeill & Libby v. Dept. of Taxation, supra,* 260 Wis. at 558, 559. In each case the court must determine whether justice requires the application of the doctrine of estoppel; the determination of whether the state is estopped must be made on a case-by-case basis."

The first question for this court is therefore whether the city proved the basic elements of the defense of equitable estoppel applicable to both governmental and nongovernmental entities. This court has recognized the following test for the applicability of equitable estoppel as a defense:

"The defense of equitable estoppel consists of action or non-action which, on the part of one against whom estoppel is asserted, induces reliance thereon by the other, either in action or non-action, which is to his detriment. *Chicago & Northwestern Transportation Co. v. Thoreson Food Products, Inc.,* 71 Wis.2d 143, 153, 238 N.W.2d 69 (1976). It is elementary, however, that the reliance on the words or conduct of the other must be reasonable (*Chicago & Northwestern Transportation Co. v. Thoreson Food Products, Inc., supra* at 154) and justifiable (*Matter of Alexander's Estate,* 75 Wis.2d 168, 183–84, 248 N.W.2d 475 (1977))." *Kohlenberg v. American Plumbing Supply Co.,* 82 Wis.2d 384, 396, 263 N.W.2d 496 (1978).

See also, *City of Milwaukee v. Milwaukee County,* 27 Wis. 2d 53, 66, 133 N.W.2d 393 (1965); *Department of Revenue v. Moebius Printing Co.,* 89 Wis.2d 610, 634, 279 N.W.2d 213 (1979). Under this definition of estoppel, "[t]hree facts or factors must be present: (1) Action

*or nonaction* which induces (2) reliance by another (3) to his detriment." *Gabriel v. Gabriel,* 57 Wis.2d 424, 429, 204 N.W.2d 494 (1973) (Emphasis in original). See also, *Bank of Sun Prairie v. Opstein,* 86 Wis.2d 669, 680, 273 N.W.2d 279 (1979). This court has said that "the proof of estoppel must be clear and convincing and may not rest on conjecture." *Bank of Sun Prairie v. Opstein,* 86 Wis.2d 669, 680, 273 N.W.2d 279 (1979); *In Matter of Estate of Alexander,* 75 Wis.2d 168, 183, 248 N.W.2d 475 (1977); Wis. J.I. Civil No. 3074.

In several cases this court has stated that in order to estop the government, the government's conduct must be of such a character as to amount to fraud. *See, e.g., Ryan v. Department of Revenue,* 68 Wis.2d 467, 471, 228 N.W.2d 357 (1975); *Surety Savings & Loan Asso. v. State,* 54 Wis.2d 438, 445, 195 N.W.2d 464 (1972); *Monahan v. Department of Taxation,* 22 Wis.2d 164, 125 N.W.2d 331 (1963); *Libby, McNeill & Libby v. Dept. of Taxation,* 260 Wis. 551, 558, 51 N.W.2d 796 (1952). But this court has noted that the word fraud used in this context is not used in its ordinary legal sense; the word fraud in this context is used to mean inequitable:

"The term 'fraud' used by the court is not to be construed here as it is used in the ordinary sense—as an artifice, a malevolent act, or a deceitful practice.
" 'The meaning here [in the application of the doctrine of estoppel] given to fraud or fraudulent is virtually synonymous with "unconscientious" or "inequitable." ' 2 Pomeroy, Eq. Jur. (4th ed.), p. 1640, sec. 803." *Libby, McNeill & Libby v. Dept. of Taxation, supra,* 260 Wis. at 558–559. See also *State ex rel. Attorney General v. Janesville Water Co.,* 92 Wis. 496, 504, 66 N.W. 512 (1896).

The court of appeals concluded that because the circuit court did not frame its findings in terms of the elements of estoppel, the court of appeals was "obligated to review

the record to determine whether Green Bay has, by 'clear and distinct' evidence established the requisites for invoking estoppel against the state." We disagree with this approach. Counsel for both the city and the state have interpreted the circuit court decision as accepting the city's defense of estoppel. We have reviewed the lengthy and well reasoned decision of the circuit court, and we conclude that the decision in effect adopts the city's position that the state should be estopped from collecting forfeitures in this case.

Accordingly, the applicable rule for appellate review in the case at bar is that the findings of fact of the trial court will not be upset on appeal unless they are against the great weight and clear preponderance of the evidence. The evidence supporting the findings of the trial court need not in itself constitute the great weight or clear preponderance of the evidence; nor is reversal required if there is evidence to support a contrary finding. Rather, to command a reversal, the evidence in support of a contrary finding must itself constitute the great weight and clear preponderance of the evidence. *In re Estate of Jones,* 74 Wis.2d 607, 611, 247 N.W.2d 168 (1976). In addition, when the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses. *Gehr v. Sheboygan,* 81 Wis.2d 117, 122, 260 N.W.2d 30 (1977). When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact. *Cogswell v. Robert Shaw Controls Co.,* 87 Wis.2d 243, 249–250, 274 N.W.2d 647 (1978).

No formal findings of fact were made in this instant case. The parties, by stipulation approved by the circuit court, agreed that the circuit court's decision would stand as the findings of fact and conclusion of law. Thus the statements of fact appearing in the memorandum de-

cision will be accorded the status of findings of fact, and if there is credible evidence in the record upon which the circuit court's findings could be based, the findings will stand unless they are against the great weight and clear preponderance of the evidence.[5]

The trial took five full days. The circuit court had the benefit of testimony and numerous exhibits. Upon review of the record, we conclude that the circuit court's statements of fact are not contrary to the great weight and clear preponderance of the evidence and that the city established the defense of estoppel. The trial court's statements of fact satisfy the three factors initially required to be established for a valid equitable estoppel defense:

(1) Action or nonaction which induces
(2) reliance by another
(3) to his detriment.

---

[5] Sec. 805.17(2), Stats.:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the ultimate facts and state separately its conclusions of law thereon. The court shall file its findings and conclusions prior to rendering judgment. . . . Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. . . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of ultimate fact and conclusions of law appear therein. If the court directs a party to submit proposed findings and conclusions, the party shall serve the proposed findings and conclusions on all other parties not later than the time of the submission to the court. The findings and conclusions or memorandum of decision shall be made as soon as practicable and in no event more than 60 days after the cause has been submitted in final form."

See, *Stevens v. White Motor Corp.*, 77 Wis.2d 64, 71, 73, 252 N.W.2d 88 (1977); *Hochgurtel v. San Filippo*, 78 Wis.2d 70, 85, 253 N.W.2d 526 (1977).

As to the first factor, the action or non-action of the DNR, the circuit court found that the Brown County landfill was the only solution for the city's landfill needs considered seriously by the DNR and the city; that beginning as early as October 1, 1970, and continuing throughout the time involved in the controversy, there was a "consistent purpose and intent on the part of both units of local government to proceed with a countywide solid waste disposal system" and that Brown County and the DNR were actively engaged in planning for the county waste disposal system for use by the county and by municipalities on a regional basis; that the participation of the city in the Brown County landfill was essential to the development of the county landfill; that the aldermen of the City of Green Bay are members of the Brown County Board; that on May 1, 1973, a resolution was adopted by the City of Green Bay pledging its cooperation and participation in the Brown County Solid Waste Disposal Plan; that the creation of the Brown County Solid Waste Authority in September, 1973, "which was proposed by the DNR was such an obviously sensible solution that it immediately recommended itself to all persons involved;" that the DNR based its deadlines for closing the old city sites on the anticipated opening of the county site; that the DNR's approval was necessary for the operation of the county system; that the DNR's handling of the environmental impact statement for the county system was a major cause of the delay in approval of and in the opening of the Brown County landfill; that other action and inaction of the DNR also caused delays in the DNR's approval of the county system; and that the DNR controlled the length of time for which forfeitures were later sought by determining the date of approval of the Brown County landfill.

The essence of the circuit court's findings is that DNR's "message" to the city was that a county site

would be available to the city within the time set forth in the DNR's closure orders and that the county site was the only alternative site available and under consideration for the city's use.

These findings are not against the great weight and clear preponderance of the evidence. Although there was some testimony that other landfill sites were available to the city for use on an interim basis, the trial court found such testimony unconvincing and viewed the testimony as "a last-minute attempt to comply with a request by this Court to indicate what short-term alternatives there were." Before the county site was approved, the DNR had continued to license the garbage pick-up in the city which was brought to the old site. The circuit court pointed out that this licensing of garbage pick-up "indicates that no one seriously considered any other location for the dumping of these substantial amounts of waste."

The circuit court relied on a newspaper report of the meeting of October 10, 1973, between attorneys for the city and for the DNR at which an extension of time was granted to the city until July 1, 1974.[6] The DNR attorney was quoted as saying, "If it is apparent by next June or July that a countywide landfill system will be operational shortly after July 1, it is unlikely the city would be prosecuted for failing to meet the deadline." The circuit court concluded from this quoted statement that the DNR expected the county system to be in operation by July 1. The circuit court was persuaded that the county landfill was the only site considered by the

---

[6] The circuit court determined that:

"the reporting of this meeting by the two daily newspapers in the City of Green Bay [had] the necessary detachment and circumstantial guarantee of trustworthiness for this Court to rely on it to establish what took place. In my judgment this reporting complies with Rule 908.045(6) of the Wisconsin Rules of Evidence. The terms of the new conditions were spelled out with considerable detail and accuracy."

city and by the DNR as a solution to the city's problem.

The record shows the circuit court's finding that the delay in the opening of the county landfill system was attributable, at least in part, to the DNR was not against the great weight and clear preponderance of the evidence. The record shows that a DNR employee complained about repetition and delay in gathering information. The DNR needed more time than originally anticipated to prepare the environmental impact statement and the delay of the statement contributed to the delay in opening the county site; the DNR's refusal to allow the environmental impact statement for the county disposal site on the east side of the Fox River to proceed separately from the study for the west side site delayed the opening of the county site on the east side; and the DNR vacillated on whether landfill sites could be located "below the zone of saturation."

The circuit court's finding that the same agents of the DNR who served as technical advisers to the city and county were also involved in several levels of the decision-making process and had some control over the timing of the approval of the county site was not against the great weight and clear preponderance of the evidence.

With regard to the second and third factors required to be proved for estoppel, namely, reasonable reliance by the city to its detriment, the circuit court concluded that "the fair intent of the statute [sec. 144.31(1)(b)–(e) and (2)(e), Stats.] was to require the department [DNR] and the local government agencies to work together to solve these difficult problems."[7] The circuit

---

[7] Sec. 144.31(1)(b)–(e) and (2)(e), Stats., provides:

144.31  **General powers and duties.**  (1) The department shall:
. . .
(b) Encourage voluntary co-operation by persons and affected groups to achieve the purposes of ss. 144.30 to 144.46 and 144.54.
(c) Encourage local units of government to handle air pollution and solid waste disposal problems within their respective jurisdic-

court found that the DNR in the case at bar worked closely with the city and county and that the local governmental agencies were in regular communication with the DNR concerning the city and county landfill problems.

The import of the circuit court's decision is that the city was relying on the availability of the county site which was dependent on DNR approval; that the city was relying on the DNR to act without delay to approve the opening of the county site; that the city did not search for an alternate site for interim use because such a search did not appear to be necessary and no one seriously considered any location other than the county site; and that the city's reliance on prompt DNR approval of the county site was reasonable and justifiable in light of the statutory requirements and the cooperative efforts between the DNR, the city and the county in planning and working towards approval of the county landfill site. Because of the city's reliance on the DNR, the city was unable to meet the deadline for closing the old sites and was subject to being prosecuted for substantial forfeitures, to its detriment. The circuit court's findings relating to the three factors of estoppel are not against the great weight and clear preponderance of the evidence.

---

tions and on a regional basis, and provide technical and consultative assistance therefor.

(d) Collect and disseminate information and conduct educational and training programs relating to the purposes of ss. 144.30 to 144.46 and 144.54.

(e) Organize a comprehensive and integrated program to enhance the quality, management and protection of the state's air, land and water resources.

(2) The department may:

. . .

(e) Advise, consult, contract and co-operate with other agencies of the state, local governments, industries, other states, interstate or interlocal agencies, and the federal government, and with interested persons or groups.

As we stated previously, even if the three elements of estoppel are proved, in order to estop a governmental entity, the court must balance the public interest at stake if the doctrine is applied against the injustice that might be caused if the estoppel doctrine is not applied. As the city points out, in the instant case the public interest has been served because the city sites have been closed. The estoppel defense is not being raised to bar the state from enforcing regulatory laws enacted for the public health and welfare. The estoppel defense is being raised to bar the state from asserting its claim for collecting forfeitures.

The case at bar is distinguishable from the one presented in *Park Bldg. Corp. v. Industrial Comm.,* 9 Wis.2d 78, 87, 100 N.W.2d 571 (1968), upon which the state relies. In the *Park* case the Industrial Commission ordered a corporation to enclose its stairwells and denied the corporation relief from this provision of the state building code. The corporation sought judicial review of the commission's decision and asserted that the commission was estopped from enforcing the building code. In *Park* the corporation sought to be excused from compliance with the code. This court held that the code requirement that stairwells be enclosed was promulgated to protect public safety and "there can be no estoppel invoked against the commission or its deputized agent, in enforcing such safety order." *Park Bldg. Corp. v. Industrial Comm., supra,* 9 Wis.2d at 88.

In the case at bar, unlike in *Park,* the city is not asking that it be excused from complying with laws, regulations and orders adopted for the public health and safety. The city is asking that it not be required to pay a forfeiture to the state. The import of the circuit court's decision in the case at bar is that it would be inequitable to allow the state to collect a forfeiture from the city when the state's conduct led the city to believe that a county

site would be available in time and that there was no need for the city to find an alternative site for interim use. Although state revenue is important, it is also important that local governmental agencies be able to rely on state agencies with which they work and that good working relations be maintained and fostered between state agencies and local governments.

We conclude, as did the circuit court, that in the instant case the public interest would not be unduly harmed by invoking the doctrine of estoppel against the state and that it would be inequitable to require the city to pay a forfeiture under the circumstances of this case.

*By the Court.*—The court of appeals decision is affirmed in part and reversed in part. The circuit court's judgment is affirmed.