Randall E. BAURES, Plaintiff-Appellant,†

v.

NORTH SHORE FIRE DEPARTMENT, Defendant-Respondent.

Court of Appeals

*No. 02–1936. Oral argument April 1, 2003.—Decided April 29, 2003.*

2003 WI App 103

(Also reported in 664 N.W.2d 113.)

† Petition to review denied 10-1-03.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs *Scott L. Schroeder* of *Scott L. Schroeder, S.C.*, of Janesville, Wisconsin. There was oral argument by *Scott L. Schroeder*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Andrew A. Jones*, of *Whyte Hirschboeck Dudek, S.C.*, of Milwaukee. There was oral argument by *Andrew A. Jones*.

Before Fine, Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Lieutenant Randall E. Baures appeals from the circuit court's judgment granting summary judgment and dismissing his action challenging the North Shore Fire Department's decision to not promote him to the position of Battalion Chief. He contends that the court erred in rejecting his argument

that, under both WIS. STAT. § 62.13(4) (1999–2000)[1] and the doctrine of promissory estoppel, the Department was required to promote him to that position or, at the very least, enforce the promotion criteria it announced. We conclude, however, that although the promotion process was irregular in some respects, the Department gave Lt. Baures the promotion consideration he was due under § 62.13(4). We also conclude that because the Department did consider him for the promotion, Lt. Baures' promissory estoppel claim fails. Accordingly, we affirm.

## I. BACKGROUND

¶ 2. In 1999, the North Shore Fire Department sought to fill a vacancy at the rank of Battalion Chief. The Department[2] issued a "Promotional Announcement" seeking applicants, pursuant to WIS. STAT. § 62.13(4)(c).[3] The announcement stated:

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

[2] Throughout this opinion, we often will refer to the "Department" even when, more precisely, we might actually mean either of two separate entities exercising authority over the Department: the North Shore Fire Commission, and the Board of Directors of the Fire Commission. As confirmed at oral argument before this court, the record, at times, may not precisely define and distinguish the Commission and the Board. For resolution of the issues in this appeal, however, the distinction makes no difference; accordingly, we refer to these entities as the "Department."

[3] In relevant part, WIS. STAT. § 62.13(4) provides:

SUBORDINATES. (a) The chiefs [of police and fire departments] shall appoint subordinates subject to approval by the board [of police and fire commissioners]. Such appointments shall be made by promotion when this can be done with advantage, otherwise

# ANNOUNCEMENT OF PROMOTIONAL TESTING FOR THE RANK OF BATTALION CHIEF

## FOR POSTING AT ALL NORTH SHORE FIRE STATIONS ON MARCH 2, 1999

The North Shore Fire Commission announces its intention to fill a vacancy in the rank of Battalion Chief that will occur when Chief Donald Kopacz retires on June 1, 1999. It will search for a qualified individual already employed by the North Shore Fire Department prior to opening up the testing process to candidates from outside the Department.

The appointee will initially be assigned to oversee one of the three duty shifts. However, those who occupy the Battalion Chief rank are subject to rotation of duties at the discretion of the Fire Chief. Thus, the Commission will search for an individual who is also fully capable of performing the duties of those Battalion Chiefs who are not shift supervisors. The person promoted to this position will be on probation in the new rank for a period of one year. The appointment will *not* be in an "acting" capacity.

---

from an eligible list provided by examination and approval by the board and kept on file with the clerk.

. . . .

(c) For the choosing of such list the board shall adopt, and may repeal or modify, rules calculated to secure the best service in the departments. These rules shall provide for examination of physical and educational qualifications and experience, and may provide such competitive examinations as the board shall determine, and for the classification of positions with special examination for each class. The board shall print and distribute the rules and all changes in them, at city expense.

# QUALIFICATIONS[1]

*The minimum qualifications to apply for promotion* to the rank of Battalion Chief are as follows:

1. Associate degree or equivalent.[2]

2. Five years of consecutive experience at the rank of Fire Lieutenant or above, or ten years of progressively responsible fire service experience with at least five years as a fire officer[3] in a full-time department;

3. Wisconsin Fire Officer I *certification;*

4. Wisconsin Fire Training Instructor I *certification* (NFPA-1041);

5. Wisconsin Fire Inspection I *certification;*[4]

6. Maintenance of continuous education courses in such areas as disaster preparedness, public management, fire department administration, etc.; and

7. A valid Wisconsin driver's license or such valid operator's permit recognized by the Wisconsin Department of Transportation as authorizing operation of a motor vehicle in Wisconsin.

## APPLICATION PROCESS

Persons who meet the qualifications stated above and who are interested in promotion to the rank of Battalion Chief should advise Chief Berousek by submitting the following documents to him on or before **March 31, 1999 at 4:00 PM**:

A professional resume with particular attention to all educational achievements and professional experience; and

A written memorandum detailing what the candidate has done to prepare himself or herself for advancement in the fire service in general and for promotion to the battalion chief rank in particular.

821

## PROMOTION PROTOCOL

The process for promoting a Battalion Chief will include several steps, including an assessment center, a written assessment by the Fire Chief, an oral interview with the Fire Commission, and a psychological assessment.

Thomas J. Hammer

Chairman of the Commission

---

[1] All qualifications for appointment must be met by March 31, 1999 except #5 re: Wisconsin Fire Inspection I certification.

[2] A person who does not have an Associate Degree may nonetheless apply for this position if he or she is able to make the case that other schooling and experience is the "equivalent" of having an Associate Degree. %r %rThis should be specified in the application.

[3] Time spent as a "fire officer" includes service in a supervisory capacity including, for example, actual time spent in acting supervisory positions.

[4] If a candidate does not already have the Wisconsin Fire Inspection I certification, he or she will have three years to obtain that certification as a condition of the promotion to Battalion Chief.

(Emphases added.) The Announcement brought applications from Lt. Baures and four other departmental employees; one of them, Lt. Mark Kuopus, ultimately was selected.

¶ 3. The "North Shore Fire Department Job Description" for "Battalion Chief," in the section titled, "Education/License/Certificate Requirements," included three prerequisites relevant to this case:

4) Wisconsin Fire Officer I.

5) Wisconsin Fire Training Instructor I State Certification (NFPA-1041).

6) Wisconsin Fire Inspection I.

Depending on one's interpretation, the Announcement was, to varying degrees, consistent or inconsistent with the Job Description. Sorting out each of these three requirements is essential to understanding the factual background and isolating the factual dispute in this case.

### A.

### WISCONSIN FIRE OFFICER I

- **Announcement: "Wisconsin Fire Officer I certification"**

- **Job Description (under "Certificate Requirements" heading): "Wisconsin Fire Officer I"**

¶ 4. The summary judgment submissions included differing views on whether the Announcement and Job Description were accurate and consistent with each other in their descriptions of this requirement. For example, in his affidavit, Attorney Thomas Hammer, Chair of the North Shore Fire Commission, stated that the Announcement "incorrectly described the minimum qualification[]" by including "certification" in this portion. He maintained that the Job Description "only requires [a] certificate[] of completion" for Wisconsin Fire Officer I.[4] Further, Mr. Hammer explained:

> The Fire Commission does not have the authority to modify the job description for the position of Battal-

---

[4] In his affidavit, Mr. Hammer explained:

Under the fire[-]service[-]training program of the State of Wisconsin, a "certificate of completion" is issued upon the successful completion of the required courses in a given area of training. In

ion Chief as adopted by the Board. Thus, any conflict between the March 2, 1999 vacancy notice and the job description for Battalion Chief was in error and did not reflect a decision by the Fire Commission to alter the minimum requirements for the position.

Thus, Mr. Hammer's view would: (1) graft "Certificate" from the Job Description section heading to "Wisconsin Fire Officer I" in the Job Description list of requirements; (2) interpret "Certificate" to mean "certificate of completion" rather than "certification"; and (3) preclude the Announcement's "certification" requirement from supplanting the Job Description's "certificate [of completion]" requirement.

¶ 5. By contrast, in his affidavit, Attorney Thomas E. Dolan, who for more than twenty-five years served as Chair or President of the Brown Deer Fire and Police Commission, explained that "the word 'certificate[,]' as opposed to 'certification[,]' . . . in the Section heading" of the Job Description was "not relevant to anything contained in the Section," and that "to require only a certificate would mean the candidate had merely attended a course having to do with the elements of a Fire Officer I." Thus, Mr. Dolan opined, "to conclude that the minimum requirements only required a certificate of completion of the course requirements in a certain subject, rather than being proficient in the subject matter by examination and certification would be ludicrous."

turn, a separate "certification" is issued upon the successful completion of the test or examination that responds to the training courses in question.

## B.

## WISCONSIN FIRE TRAINING INSTRUCTOR I

- **Announcement: Wisconsin Fire Training Instructor I certification (NFPA-1041)**

- **Job Description (under "Certificate Requirements" heading): Wisconsin Fire Training Instructor I State Certification (NFPA-1041)**

¶ 6.   These listings in the Announcement and Job Description were identical. Thus, it would seem, this certification was a clear prerequisite for the promotion. According to Mr. Hammer, however: "None of the five candidates possessed a Wisconsin Fire Training Instructor I certification, but the Fire Department could not enforce this requirement because (as the Commission learned once it discovered the errors in the vacancy notice) at the time such a certification was no longer recognized or issued by the State of Wisconsin under its fire[-]service[-]training program." On appeal, Lt. Baures does not dispute this portion of Mr. Hammer's statement.

## C.

## WISCONSIN FIRE INSPECTION I

- **Announcement: "Wisconsin Fire Inspection I certification"**

- **Job Description (under "Certificate Requirements" heading): "Wisconsin Fire Inspection I"**

¶ 7.   Here, as with "Wisconsin Fire Officer I," the parties' summary judgment submissions and interpretations differ on whether the Job Description required

a certificate of completion or certification. This requirement, however, does not factor into the issue on appeal because, according to the footnote to the requirement in the Announcement, an applicant lacking this certification was not disqualified; he or she would have "three years to obtain that certification as a condition of the promotion to Battalion Chief."

¶ 8.  Therefore, because the lack of certification for Wisconsin Fire Inspection I could not disqualify an applicant, and because a certification for Wisconsin Fire Training Instructor I no longer was available (and none of the applicants had it), only the disputed views of one prerequisite—"Wisconsin Fire Officer I Certification" in the Announcement and "Wisconsin Fire Officer I" (under the "Certificate Requirements" heading) in the Job Description—factor into the analysis. And before focusing on that, we must also consider two provisions of one additional, essential document: the Rules and Regulations of the Department.[5]

¶ 9.  In a section titled, "General Regulations," the Department's Rules and Regulations provide: "No member or employee shall fail to obey every rule, policy, procedure, regulation, general order or other guideline or requirement set forth in this Manual, or any directive, general order, rule or regulation however received." No one disputes that this mandate would encompass the minimum qualifications listed in the Department's job descriptions and, therefore, unless

---

[5] The record on appeal includes a photocopy of the single page on which these provisions appear, but not a title page or other heading linking these provisions to the North Shore Fire Department. In their briefs and at oral argument before this court, however, the parties extensively referred to these provisions and did not dispute that these provisions are from the Department's Rules and Regulations.

otherwise preempted, would preclude a modification from "certification" to "certificate" of completion.

¶ 10. Just four lines later, however, the Rules and Regulations, in a section titled, "Exemption by the Fire Chief," provide: "The Fire Chief, in the interest of flexibility and practical management, may exempt specific members and employees of the Department from any provision or provisions of this manual where, in his or her opinion, the Department would benefit from such exemption."

¶ 11. Although only Lt. Baures met the minimum "certification" qualifications,[6] all five applicants were considered for the position. On June 29, 1999, Chief Berousek promoted Lt. Kuopus to the position of Battalion Chief and, one year later, the Department confirmed his permanent status in that rank.

¶ 12. Lt. Baures challenged Lt. Kuopus' promotion under Wis. Stat. § 893.80, relating to claims against governmental bodies. Pointing out that he was the only applicant who satisfied the "certification" prerequisites listed in the Announcement, Lt. Baures contended that Lt. Kuopus and the others should not even have been considered for the promotion. Rejecting Lt. Baures' challenge, Commission Chair Hammer wrote Lt. Baures advising him that the Department had concluded:

---

[6] The Department does not dispute Lt. Baures' contention that neither Lt. Kuopus nor the other applicants, with one possible exception, met the minimum qualifications. And specifically with respect to Lt. Kuopus, Lt. Baures explains: "Kuopus was not a Wisconsin Fire Officer I, certified by the State of Wisconsin. Kuopus' Wisconsin Fire Instructor II certification expired one day short of the minimum requirement. Kuopus never possessed a Wisconsin Fire Instructor I certification/recognition."

827

(1) "the 'Wisconsin Fire Officer I' requirement in the official job description may be satisfied by obtaining a 'Certificate of Completion' issued by the Milwaukee Area Technical College for the 'Wisconsin Certified Fire Officer I' course"; and

(2) the Department could not "enforce the 'Wisconsin Fire Training Instructor I' certification requirement because, according to written documentation provided to the Department by David J. Brooks, [Fire Education and Training Consultant for the Wisconsin Technical College System Board], Fire Instructor I 'is *not* a valid certification level within the Wisconsin Technical College System Fire Service Training certification program.' "

(Footnote and abbreviations omitted.) Thus, interpreting its Announcement requirement for the Fire Officer I "certification" as allowing for a "certificate of completion" (which Lt. Kuopus had), and removing the requirement for a Fire Training Instructor I certification (which neither Lt. Baures nor Lt. Kuopus had), Mr. Hammer advised Lt. Baures that "the promotion awarded . . . stands."

¶ 13. Lt. Baures then challenged the Department's action—in a federal court action that was dismissed, and in the state court suit underlying this appeal. In his state court complaint, Lt. Baures alleged that he had expended substantial time and money to obtain the education and training to meet "the minimum qualifications" for the position; that he, not Lt. Kuopus, had satisfied those prerequisites; that, to his detriment, he had relied on the Department's Announcement; and that the Department, in passing over him and promoting Lt. Kuopus, had violated Wis. Stat. § 62.13(4) and the doctrine of "promissory estoppel." He

sought damages for loss of earnings, earning capacity, back wages and front wages, reinstatement of benefits and seniority, and injunctive relief providing appointment to the position or, in the alternative, "reopen[ing] the position for all of the remaining qualified candidates as posted on 3–2-99 excluding Lt. Kuop[u]s ."

¶ 14.   Both Lt. Baures and the Department moved for summary judgment. Granting the Department's motion and dismissing Lt. Baures' claim under WIS. STAT. § 62.13, the circuit court explained:

> Analysis of [Lt. Baures'] claim that the Department violated [WIS. STAT. § 62.13(4)(a)] must begin by resorting to the plain language of that section . . . .
>
> > The chiefs shall appoint subordinates subject to approval by the board. Such appointments *shall be made by promotion* when this can be done with advantage, *otherwise* from an eligible list provided by examination and approval by the board and kept on file with the clerk.
>
> (Emphasis added.) This court agrees with the Department's interpretation of that provision. Clearly, the plain language of [WIS. STAT. § 62.13(4)(a)] gives chiefs virtually unfettered discretion, (subject only to board approval), to appoint subordinates from within the department. "Otherwise," the legislature directs that the appointment of subordinates be made "from an eligible list." If the word "otherwise" is to have any meaning at all . . ., it must surely signal a shift from the unfettered discretion of a chief to promote from within, to the procedures which must be followed should the chief determine that promotion from within cannot "be done with advantage." In the latter instance, the legislature directs that appointments be made "from an eligible list . . . ."

The court determined, therefore, that the remaining

portions of the statute dealing with the "eligible list" procedures were inapplicable; they had nothing to do with Lt. Baures' dispute with the Department because his case involved the promotion of a subordinate from within the fire department.

¶ 15. Thus, the circuit court concluded, the specific qualifications listed in the Announcement—and what Lt. Baures alleged was either the misstatement or improper modification of those minimum qualifications—was of no significance. The court explained:

> The fact that the Department, in its discretion, chose to post such a vacancy notice when promoting from within the Department does not convert the [Announcement] into a legislative mandate under [Wis. Stat. § 62.13(4)], or require the Department to comply with the provisions regarding vacancy notices under [§§ 62.13(4)(c) & (d)]. Moreover, even assuming, *arguendo,* that the Department failed to follow its own internal rules or procedures in this case, such a failure does not translate into a violation of [§ 62.13(4), which says nothing about what those internal rules or procedures must be, (or even that they must exist), when promoting from within the Department.

¶ 16. Also granting summary judgment and dismissing Lt. Baures' promissory estoppel claim, the circuit court further explained:

> The promise upon which [Lt. Baures] is relying is the vacancy announcement. The vacancy announcement, at most, constituted a promise that any candidate who fulfilled the minimum requirements therein would be considered for a position. It certainly did not promise that any candidates who fulfilled the minimum requirements . . . would be guaranteed a position . . . . [Lt. Baures] in fact has already got exactly what the

830

vacancy announcement promised, (that is, he was considered for a position). Moreover, [Lt. Baures] does nothing to refute the Department's argument that nearly all of his claimed reliance occurred prior to the promise.

¶ 17.   For the reasons we will explain, we conclude that the circuit court's analysis is sound.

## II. DISCUSSION

¶ 18.   We review an order granting summary judgment *de novo* using the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

### A. WISCONSIN STAT. § 62.13(4)

¶ 19.   "Interpretation and application of a statute to undisputed facts presents a question of law subject to our *de novo* review." *Bohrer v. City of Milwaukee*, 2001 WI App 237, ¶ 7, 248 Wis. 2d 319, 635 N.W.2d 816. "Applying a clear and unambiguous statute, we 'do not look beyond the statutory language to ascertain its meaning.' " *Id.* (citation omitted). Nevertheless, we may "construe a statute whose meaning is clear if a literal application would lead to an absurd or unreasonable result." *Coca-Cola Bottling Co. v. La Follette*, 106 Wis. 2d 162, 170, 316 N.W.2d 129 (Ct. App. 1982).

831

■

¶ 20. WISCONSIN STAT. § 62.13(4)(a) is clear and unambiguous. It first mandates that, subject to commission approval, chiefs of police and fire departments "shall appoint subordinates" for promotion within the department "when this can be done with advantage." WIS. STAT. § 62.13(4)(a). In short, under the statute, "[a]ppointments are to be made by promotion within the ranks . . . when qualified insiders exist." *Glendale Prof'l Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 106, 264 N.W.2d 594 (1978). This portion of the statute neither specifies the promotion process nor restricts a chief's discretion in any way, other than making a chief's selection subject to departmental approval.

¶ 21. The statute next provides that "otherwise" —i.e., if promotion from within the department cannot be "done with advantage"—the alternative appointment process involving "an eligible list" comes into play. That alternative appointment process then triggers the "list" requirements of WIS. STAT. § 62.13(4)(c) to provide the "rules calculated to secure the best service in the departments" (and the additional requirements of § 62.13(4)(d) relating to examination, experience, and veteran preference). Under the unambiguous words of the statute, however, these "otherwise" provisions simply are not triggered when a chief has appointed a subordinate who can be promoted "with advantage." *See Miller v. Thomack*, 210 Wis. 2d 650, 661, 563 N.W.2d 891 (1997) (courts must assume that the legislature intended statutory words to have their ordinary and accepted meanings).

■

¶ 22. Here, Chief Berousek chose to promote from within and the Department approved the appointment.

Apparently, the Chief and the Department determined that Lt. Kuopus' promotion would be "with advantage" to the North Shore Fire Department and, therefore, they never needed the "eligible list" alternative that "otherwise" would have been available. *See* WIS. STAT. § 62.13(4)(a). The curiosity of this case, however, is that the Chief and Department did indeed proceed under the "promotion protocol" of the Announcement, involving several steps including an interview and various assessments. Therefore, the resulting selection process appears as a hybrid, sharing aspects of both the "with advantage" and "otherwise . . . eligible list" approaches of § 62.13(4)(a).

¶ 23.   Thus, Lt. Baures argues, the Department should be required to follow the procedures it set in motion and enforce the job prerequisites it posted. He convincingly contends that the Department's *post hoc* interpretation of the Announcement and the Job Description—substituting "certificate [of completion]" for "certification"—was more rationalization than rationale. Lt. Baures' problem on appeal, however, is that he is unable to establish that he was denied anything he was due.

¶ 24.   Seeking promotion from within, Lt. Baures was considered—under the first alternative procedure of WIS. STAT. § 62.13(4), but with added aspects of the second alternative procedure entering into the selection process. But those added aspects were not required. Concluding that one of his own subordinates, Lt. Kuopus, could be promoted "with advantage," Chief Berousek never had to afford any applicant any consideration under the second statutory procedure. The fact that he chose to do so does not change the fact that Chief Berousek and the Department never were required to consider Lt. Baures and the other applicants

under the statutory criteria that would have been triggered had they not located a subordinate for promotion "with advantage."

¶ 25.   While we appreciate Lt. Baures' frustration in finding that he was not promoted despite believing himself to be the only applicant satisfying the posted prerequisites, and while we wince at the proposition that "certificate [of completion]" and "certification" are interchangeable, we must be mindful of the flexibility granted to police and fire chiefs and their departments. Here, for example, while the Department's Rules and Regulations require obedience by every employee to every rule, they then allow the chief, "in the interest of flexibility and practical management," to "exempt . . . employees . . . from any provision . . . where, in his or her opinion, the Department would benefit from such exemption."

¶ 26.   Therefore, unquestionably, even if we were to conclude that the Announcement's posted prerequisites applied as Lt. Baures contends, the Department's Rules and Regulations would have allowed Chief Berousek to exempt Lt. Kuopus from the "certification" requirement. And such exemption-granting discretion "complements, rather than contradicts," the broad authority granted chiefs under the "with advantage" standard for promotion from within a department under WIS. STAT. § 62.13(4). *See Glendale Prof'l Policemen's Ass'n*, 83 Wis. 2d at 109, 101–07 (Under WIS. STAT. § 62.13(4)(a), a "labor contract requiring the chief to appoint the most senior qualified candidate does not contradict an express command of law" and, therefore, the labor contract's restriction is compatible with what otherwise might be deemed the "unfettered discretion" of the chief to promote from within the department; further, because the labor contract and § 62.13(4)(a)

"can be harmoniously construed," the contract does not violate "the home rule amendment" of the Wisconsin Constitution. *See* WIS. CONST. art. XI, § 3.).

¶ 27. Our conclusion is consistent with the commonsense considerations articulated in the HANDBOOK FOR WISCONSIN POLICE AND FIRE COMMISSIONERS, published by the League of Wisconsin Municipalilties, and relied on by both parties in this case. *See* HANDBOOK FOR WIS. POLICE & FIRE COMM'RS, 47–49, (League of Wis. Muns. 2001). Commenting on WIS. STAT. § 62.13(4)(a), the HANDBOOK provides, in part:

> The chief of the department, rather than the police and fire commission, initially determines whether the appointment of a subordinate can be accomplished "with advantage."
>
> While it may be the practice in some communities for the police and fire commission to conduct promotional examinations and require the chief to appoint from a list of eligible candidates from within the department, there is no basis in state law for the commission to impose such limitations on the chief's discretion . . . . A promotion process, once adopted, need not be used each time a vacancy occurs; the chief and other senior officers are usually in the best position to know if personnel within a department are qualified for promotion and if use of a promotion process is necessary or not in each case.
>
> . . . .
>
> Promotions should reflect a chief's needs and the department's interests. Police and fire chiefs are often in the best position to determine the kinds of knowledge, skills and experience subordinates at progressively higher levels of responsibility in a department need to possess.

835

¶ 28. Thus, we conclude, the circuit court correctly granted summary judgment dismissing Lt. Baures' claim under WIS. STAT. § 62.13.

## B. Promissory Estoppel

¶ 29. To prevail on a claim under the doctrine of promissory estoppel, one must establish that: (1) he or she received a promise that the promisor should reasonably have expected would "induce action or forbearance of a definite and substantial character on the part of the promisee"; (2) the promise did indeed "induce such action or forbearance"; and (3) "injustice" can "be avoided only by enforcement of the promise." *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 698, 133 N.W.2d 267 (1965). While the first two elements "present issues of fact which ordinarily will be resolved by a jury, the third requirement, that the remedy can only be invoked where necessary to avoid injustice, is one that involves a policy decision by the court." *Id.*

¶ 30. Whether the undisputed facts presented on summary judgment establish a claim for promissory estoppel presents an issue of law subject to *de novo* review. *See Schaller v. Marine Nat'l Bank*, 131 Wis. 2d 389, 401, 388 N.W.2d 645 (Ct. App. 1986). Here, we conclude, the summary judgment submissions establish that Lt. Baures did not satisfy the promissory estoppel criteria.[7]

---

[7] We note that whether Lt. Baures' promissory estoppel claim is even cognizable is open to fair debate. As the parties

¶ 31.  Clearly, Lt. Baures' claim fails not because he did not receive and rely on a promise, but rather, because the essential promise was fulfilled. With the Announcement, the Department promised Lt. Baures

acknowledged at oral argument before this court, it may be that generally, in the absence of a contract or other enforceable commitment, a claim under the doctrine of promissory estoppel may not even be actionable against the government. *See, e.g., United States ex rel. Sage v. District Dir. of Immigration,* 82 F.2d 630, 631–33 (7th Cir. 1936) ("Habeas corpus does not lie to review the effect of the alleged agreement" of government to dismiss deportation action against woman in exchange for her help in apprehending John Dillinger where agreement was negotiated after she was arrested and deportation order was entered.).

On this question, it appears that some confusion comes, and some doubt remains, because courts, discussing either "promissory estoppel" or "equitable estoppel" often refer simply to "estoppel." Subsequently, other courts, dealing with either a "promissory estoppel" or "equitable estoppel" issue, quote the "estoppel" discussions without acknowledging their distinguishable contexts. *See, e.g., State v. City of Green Bay,* 96 Wis. 2d 195, 200–03, 291 N.W.2d 508 (1980). Thus, much of the case law fails to recognize what has been identified as an important distinction between the two. *See, e.g., Jablon v. United States,* 657 F.2d 1064, 1068–69 (9th Cir. 1981) (holding that equitable estoppel cases are inapplicable to promissory estoppel actions against government and stating that "[p]romissory estoppel is a sword, and equitable estoppel is a shield"); *see also Morris v. Runyon,* 870 F. Supp. 362, 373 n.21 (D.C. Cir. 1994) ("While promissory estoppel claims involve claims for enforcement of a promise, equitable estoppel serves as a bar against a party from asserting a theory of relief.").

Nevertheless, in this case, without deciding whether Lt. Baures' promissory estoppel claim could have been dismissed simply because it might not have been actionable against the Department, we address the merits.

that, if he met the minimum qualifications and applied for the promotion, he would be considered. The Department kept that promise; it never promised Lt. Baures that he would be selected. *See Cosgrove v. Bartolotta,* 150 F.3d 729, 733 (7th Cir. 1998) ("knowing that he is investing for a chance, rather than relying on a firm promise that a reasonable person would expect to be carried out, he cannot plead promissory estoppel").[8]

---

[8] Further, Lt. Baures' reliance may not satisfy the second criterion. While Lt. Baures' efforts and his investment of time and resources to gain training and certification were commendable and, no doubt, beneficial to his work, almost all of them preceded the posting of the Announcement. Thus, they might not have been induced by the Announcement. Lt. Baures does not dispute the Department's summary of his actions:

> Baures' own deposition testimony establishes that he obtained his Wisconsin Fire Officer and his Wisconsin Fire Instructor certifications in 1997 and 1990 (long before the vacancy notice of March 1999). Furthermore, Baures obtained these certifications without incurring any personal expense.
>
> Before the Circuit Court, Baures also identified five continuing education courses he took at his expense in seeking the promotion to Battalion Chief as acts of reliance on his part. (Baures briefly alludes to these courses by offering that he "spent in excess of $3,000 and many hours of training and education to prepare for the position.") However, the record demonstrates that Baures took four of these classes solely in connection with the general requirement set forth in the vacancy notice that candidates "maintain[] continuing education courses" in related areas of study. Certainly this aspect of the vacancy notice cannot be said to be the sort of definite promise necessary to establish the first prong of the promissory estoppel standard. Nonetheless, of the four courses taken by Baures in an effort to meet the general continuing education requirement, three were completed well in advance of the March 2, 1999 vacancy notice, and Baures did not even enroll in the fourth until the promotional process at issue herein was completed. Further, Baures took the fifth continuing education class not to meet the minimum qualifications contained in the vacancy notice but to prepare himself for the tests that made

¶ 32.  And finally, how would "injustice," under the doctrine of promissory estoppel be "avoided only by" somehow enforcing the promise beyond the consideration Lt. Baures' application already has received? *See Hoffman*, 26 Wis. 2d at 698. That is, even if we were to embrace Lt. Baures' promissory estoppel theory, what relief would he be due? As the Department points out, "the record is devoid of evidence that the chief or commission as a whole would have chosen Baures for the promotion had he been the only candidate." Therefore, absent an order from this court actually mandating Lt. Baures' promotion, his only apparent remedy would be for the Department to go back to square one and either a) maintain the original Announcement and enforce the "certification" requirement, or b) modify the Announcement so that a "certificate of completion" would be sufficient.

¶ 33.  On appeal, Lt. Baures jockeys between the options. First, he writes that he "simply expects the Commission to follow its own clear, unequivocal, promotional protocol." But how would that help him? If the Department were to enforce the "certification" requirement under the Announcement, it still could reject Lt. Baures simply because his promotion would not be deemed to be "with advantage" under WIS. STAT. § 62.13(4)(a). Chief Berousek and the Department then

---

up the assessment center, an aspect of the promotional process that he has not challenged in this suit.

(Citations omitted.) Moreover, whether undertaken before or after the job posting, Lt. Baures' efforts were not necessarily wasted. After all, his certification training and credentials may have helped his *chance* for promotion. The Announcement promised him not selection, but consideration, and that is what he received.

839

could open the selection process to outside applicants and/or revise the selection criteria; either way, in all likelihood, Lt. Baures would not be selected. As Chief Berousek stated in his affidavit:

> Had I not been satisfied with the candidates following the assessment center and oral interview portions of the selection process, I would have been under no obligation to recommend any of the candidates for promotion. Instead, as Fire Chief, I had the authority to reject all of the candidates. In such a circumstance, the Fire Department would have begun the selection process again, soliciting further applications from qualified Lieutenants. In the alternative, the Fire Department could have opened up the search to candidates from outside the Department.

¶ 34. On appeal, Lt. Baures also explores the second option. He writes that "if the Court buys the Department's *ex post facto* argument that the Promotional Announcement incorrectly set forth the wrong, stringent minimum qualifications, then the Department should have reposted the announcement with the more lax minimum requirements for the Battalion Chief position and reopened the protocol to anyone who met the new lax qualifications." (Emphasis added.) In that instance, however, the only persons who would have been aggrieved by the original job listing would be those holding certificates of completion who had not applied originally because they assumed they were ineligible for lack of "certification." They, not Lt. Baures, had been denied consideration because of the "certification" requirement in the Announcement. But these circumstances could hardly help Lt. Baures. Not only would additional applicants become eligible for the

promotion, but Lt. Kuopus, now satisfying the revised certificate-of-completion requirement, still could be selected.

¶ 35. Even Lt. Baures seems puzzled by the prospect of relief. He writes, "The issue for this court is whether [he] is entitled to any remedy for this injustice." Unfortunately, however, while asking that we order summary judgment for him or, in the alternative, remand for trial, Lt. Baures fails to explain how we could do either. Carefully considered, his proposed remedies do not correct any injustice.

¶ 36. Thus, while Lt. Baures is understandably upset with the promotion process, whatever "injustice" has occurred would not be redressed by ordering a trial. As his counsel conceded at oral argument, no material factual issues exist. And most importantly, whatever injustice Lt. Baures has suffered would not be redressed by ordering the Department to: (1) engage in a new selection process that, reaching the same result, would seem to be little more than a charade; or (2) remove the battalion chief selected almost four years ago and replace him with the applicant who was rejected. Thus, we conclude, the remedies Lt. Baures proposes are not the means by which "injustice can only be avoided."

¶ 37. Therefore, we conclude, the circuit court correctly granted summary judgment dismissing Lt. Baures' promissory estoppel claim.[9]

¶ 38. While we reject Lt. Baures' arguments and see no remedy for him here, we appreciate his legitimate concerns. We recognize that his legal action has

---

[9] Resolving this appeal on this basis obviates the need to address the Department's additional argument that WIS. STAT. § 893.80 bars Lt. Baures' claims. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issue need be addressed).

exposed certain difficulties in the Department's promotional process. We respect Lt. Baures' efforts to correct the injustice he suffered and share his hope, expressed at oral argument, that his pursuit of this case will help the Department in the future.

*By the Court.*—Judgment affirmed.