Walter G. Bohrer, Jr. and Wisconsin Souvenir Milkcaps, Inc., Plaintiffs-Respondents,

v.

City of Milwaukee and City of Milwaukee Police Department, Defendants-Co-Appellants,

State of Wisconsin and James Doyle, in his capacity as Wisconsin Attorney General, Defendants-Appellants.

Court of Appeals

*No. 00–3088. Submitted on briefs July 6, 2001.—Decided September 25, 2001.*

2001 WI App 237

(Also reported in 635 N.W.2d 816.)

On behalf of the defendants-appellants and defendants-co-appellants, the cause was submitted on the joint briefs of *James E. Doyle*, attorney general, and *Alan R. Kesner*, assistant attorney general.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Thomas L. Frenn* and *Mark E. Sostarich*, of *Petrie & Stocking, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1.  SCHUDSON, J.   The City of Milwaukee and the City of Milwaukee Police Department, together with the State of Wiscon sin and James Doyle, in his capacity as Wisconsin Attorney General, (collectively, "the State") appeal from the circuit court judgment granting declaratory judgment to Walter G. Bohrer, Jr., and his company, Wisconsin Souvenir Milkcaps, Inc. (collectively, "Bohrer"). The circuit court concluded that Bohrer's promotional games, "Discover Wisconsin Super Sports" and others Bohrer distributed that follow the same rules and procedures, comply with the requirements of Wis. Stat. § 100.16 and consequently are

not illegal lotteries.[2] We conclude that the circuit court was correct and, therefore, we affirm.

## I. BACKGROUND

¶ 2.  The factual background is undisputed. At all times relevant to the issues on appeal, Bohrer was the principal shareholder and chief executive officer of Wisconsin Souvenir Milkcaps, Inc., a company that produced milkcaps, also referred to as "pogs,"[3] put them on game pieces that were part of "Discover Wisconsin Super Sports" and other promotional games of chance, and marketed the games to fundraising organizations, fraternal groups and similar organizations, and retail outlets. The circuit court, in its comments leading to its decision granting Bohrer declaratory relief, explained how the "Discover Wisconsin Super Sports" game worked:

> Bohrer provides the fundraiser with a packet of materials including the devices in question. The device is a milkcap that allegedly is used in children's games and saved by collectors—similar to baseball cards or Pokemon cards. The milkcap, or pog, is a cutout contained on a pull-tab type game of chance. The purchaser [who

---

[2] The judgment also ordered the State to return all the promotional game materials it seized from Bohrer, and enjoined the State "from further interfering with, or attempting to prevent [Bohrer] from distributing or promoting" the promotional games "which include or are in the nature of the 'Discover Wisconsin Super Sports Promotion.'"

[3] According to Walter G. Bohrer, Jr.'s affidavit, his company's milkcaps are collectable items similar to those used many years ago, which were packaged under milk bottle caps to promote milk sales. More recently, the term "pog" has been used to refer to the milkcap itself, or to the children's game in which the milkcaps sometimes are used.

buys a game piece for $1.00] pulls the tabs to find out whether he or she wins a prize. The purchaser has the option to cut out the pog and save it. If a person wishes to obtain a game[]piece without a purchase, he or she may obtain it from Bohrer. The free pog is lined out, to detract from its collectibility, and does not come from the same packet as if the customer purchased from a retailer, but comes from a similar packet kept by Bohrer with the exact same odds of winning a prize.

¶ 3. In his affidavit, Walter G. Bohrer, Jr., maintained that his company "developed its promotional games to follow the same game-type format utilized by large retailers" including Coca-Cola Bottling Company of Wisconsin and McDonald's Corporation, and had "engaged the services of two different legal counsel to research the procedures and requirements that need to be followed in order to make a promotional game legal under Wisconsin law."[4] Thus, he concluded in his second affidavit, because they were structured to allow the public to participate, free of charge, at the same odds as those purchasing a game piece,[5] and because they

---

[4] Also according to the affidavit, Bohrer provided each promoter with a packet that included: "game pieces; detailed instructions on how to operate the promotion; a written agreement for the [promoter] to sign indicating the [promoter] has read and understands the promotion's rules; request forms to be used to obtain free game pieces; winner reporting forms and advertising materials." Additionally, the affidavit states that each promotion's rules and regulations, each game piece, and all promotional materials clearly indicate that no purchase is required in order to play.

[5] Apparently, some of the games offered attractive odds. According to the affidavit of John A. Palmer, Director of the Gaming Enforcement Bureau in the Division of Criminal Investigation of the Wisconsin Department of Justice, Bohrer's

complied with all statutory requirements, the games were legal in-pack chance promotions under WIS. STAT. § 100.16(2).

¶ 4. On January 11, 1999, City of Milwaukee police executed a search warrant at Bohrer's offices and seized a large number of milkcaps and numerous other materials, including some that were related to the promotional games. Maintaining that the promotional games were legal, Bohrer brought an action that ultimately sought relief including the return of "all milkcaps, promotional materials, computer files and related items seized" and a declaratory judgment that its promotions such as "Discover Wisconsin Super Sports" complied with Wisconsin law.

¶ 5. On June 22, 2000, the circuit court granted Bohrer's request for the declaratory judgment. While commenting that it was "inclined to agree with the [State], that the sale of 'Discover Wisconsin Super Sports' pieces is a thinly veiled lottery," the court concluded that Bohrer had "taken great pains to craft this promotion so it would conform to [WIS. STAT. §] 100.16," and had succeeded in doing so. We agree.

## II. ANALYSIS

¶ 6. The State does not challenge any of the circuit court's factual findings regarding the nature of the game pieces and pogs and the operation of "Discover Wisconsin Super Sports." The State therefore submits that, based on the appropriate application of certain statutes to the facts, this court should conclude as a matter of law that "Discover Wisconsin Super Sports" is an illegal lottery.

---

promotional games provided winning odds that were "higher than the odds for the Wisconsin Lottery."

¶ 7.    Interpretation and application of a statute to undisputed facts presents a question of law subject to our *de novo* review. *Wis. Cent. Ltd. v. DOR*, 2000 WI App 14, ¶ 9, 232 Wis. 2d 323, 606 N.W.2d 226, *review granted,* 234 Wis. 2d 175, 612 N.W.2d 732 (Wis. Mar. 20, 2000) (No. 99–0194). Applying a clear and unambiguous statute, we "do not look beyond the statutory language to ascertain its meaning." *Id.* [6] Nevertheless, we may "construe a statute whose meaning is clear if a

_____

[6] The circuit court concluded that WIS. STAT. § 100.16 was clear and unambiguous, and that Bohrer had fully complied with the requirements of § 100.16(2). As we will explain, the State, while not contending that the statute itself is ambiguous, maintains that its "application" is ambiguous.

Bohrer responds, in part, by asserting that the State, on appeal, is arguing ambiguity for the first time and, therefore, we should not address the argument. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980) ("[I]ssues not raised or considered in the trial court will not be considered for the first time on appeal."). In reply, the State disagrees but concedes that "the record does not contain the transcript of oral argument" before the circuit court where, the State suggests, its ambiguity claim was first raised. As the appellant, the State was responsible for perfecting the appellate record. *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26–27, 496 N.W.2d 226 (Ct. App. 1993) (appellant is responsible for ensuring completion of appellate record, and "when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling"). Nevertheless, we will address the State's ambiguity argument, to the extent that it relates to the State's central arguments in this appeal. *See Wirth*, 93 Wis. 2d at 444 (when new issue raised on appeal is legal question that has been thoroughly briefed and there are no disputed factual issues, appellate court has discretionary authority to address the issue).

literal application would lead to an absurd or unreasonable result." *Coca-Cola Bottling Co. of Wis. v. La Follette*, 106 Wis. 2d 162, 170, 316 N.W.2d 129 (Ct. App. 1982).

¶ 8. The State argues that "Discover Wisconsin Super Sports" is an illegal lottery. WISCONSIN STAT. § 945.01(5)(a) (1999–2000)[7] defines "lottery" as "an enterprise wherein for a consideration the participants are given an opportunity to win a prize, the award of which is determined by chance, even though accompanied by some skill." It is undisputed that "Discover Wisconsin Super Sports" would satisfy this definition. Under WIS. STAT. § 945.01(5)(b)2.g, however, "[t]o use a chance promotion exempt under s. 100.16(2)" does not "constitute consideration" for purposes of identifying a lottery under WIS. STAT. § 945.01(5)(a).

¶ 9. WISCONSIN STAT. § 100.16(1) prohibits "[s]elling with pretense of prize." It provides:

> No person shall sell or offer to sell anything by the representation or pretense that a sum of money or something of value, which is uncertain or concealed, is enclosed within or may be found with or named upon the thing sold, or that will be given to the purchaser in addition to the thing sold, or by any representation, pretense or device by which the purchaser is informed or induced to believe that money or something else of value may be won or drawn by chance by reason of the sale.

WISCONSIN STAT. § 100.16(2) then carves out an exception for in-pack chance promotions that satisfy seven conditions:

---

[7] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

(a) Participation is available, free and without purchase of the package, from the retailer or by mail or toll-free telephone request to the sponsor for entry or for a game piece.

(b) The label of the promotional package and any related advertising clearly states any method of participation and the scheduled termination date of the promotion.

(c) The sponsor on request provides a retailer with a supply of entry forms or game pieces adequate to permit free participation in the promotion by the retailer's customers.

(d) The sponsor does not misrepresent a participant's chances of winning any prize.

(e) The sponsor randomly distributes all game pieces and maintains records of random distribution for at least one year after the termination date of the promotion.

(f) All prizes are randomly awarded if game pieces are not used in the promotion.

(g) The sponsor provides on request of a state agency a record of the names and addresses of all winners of prizes valued at $100 or more, if the request is made within one year after the termination date of the promotion.

Thus, if "Discover Wisconsin Super Sports" satisfied all the criteria of WIS. STAT. § 100.16(2), it was entitled to the statutory exemption and, therefore, did not include the "consideration" that otherwise would have brought it within the definition of "lottery" under WIS. STAT. § 945.01(5)(a).

¶ 10.  The circuit court concluded that the criteria under WIS. STAT. § 100.16(2) were clear and unambiguous, and that "Discover Wisconsin Super Sports" met them all. Challenging that conclusion, the State offers a somewhat curious argument: that "the specific technical requirements outlined in §§ 100.16(2)(a) through (g) are mostly clear and well defined," but that "the applicability of this statute is ambiguous" when "the technical requirements are read in isolation." Relying on *HMO-W Inc. v. SSM Health Care System*, 2000 WI 46, ¶ 25, 234 Wis. 2d 707, 611 N.W.2d 250, the State contends that "[w]hen the words of a statute do not directly answer whether a statutory scheme is applicable to a given set of facts, the statute is ambiguous, and the court should turn to extrinsic aids for interpretive guidance."[8]

¶ 11.  The State then goes on to argue that the criteria under WIS. STAT. § 100.16(2) really are not applicable at all because they only relate to in-pack chance

---

[8] In *HMO-W Inc. v. SSM Health Care System*, 2000 WI 46, 234 Wis. 2d 707, 611 N.W.2d 250, both the appellant and the respondent maintained that the language of the applicable statute was clear and unambiguous, but the respondent contended that the words of the statute reflected an intent that was the opposite of that contended by the appellant. *Id.* at ¶¶ 21–23. The supreme court concluded, therefore, that the statute was ambiguous, and it "turn[ed] to extrinsic aids for interpretive guidance." *Id.* at ¶ 25.

The supreme court has explained: "A statute is ambiguous if it is capable of being understood by a reasonably well-informed person in either of two senses. Depending on the facts of a case, the same statute may be found ambiguous in one setting and unambiguous in another." *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 365, 597 N.W.2d 687 (1999) (citations omitted).

promotions, which are not defined in the statutes, and that "Discover Wisconsin Super Sports," rather than being an in-pack chance promotion, is a lottery, plain and simple. The State fails to explain, however, how it can rely on the statutory lack of definition of "in-pack chance promotion" in order to establish that "Discover Wisconsin Super Sports" is *not* an in-pack chance promotion. The State's argument, circular at best, makes no sense.

¶ 12. The State traces the legislative history of Wisconsin lottery law in an effort to establish that the legislature, in enacting WIS. STAT. § 100.16(2), intended the in-pack-chance-promotion exception to be a "narrow exception to the lottery laws to increase the sales of legitimate products at retail." According to the State, the intent of the exception is that "[t]he purchaser must pay for the product at its regular retail price, with the chance promotion being only an *added bonus, at no extra cost to the consumer.*" The State maintains, therefore, that the exception was not intended to encompass promotions like Bohrer's. But the State still fails to suggest any logical basis on which we could conclude that the detailed and apparently defining criteria of section 100.16(2) do not establish the definition of an exempted "in-pack chance promotion." *See Barakat v. DHSS,* 191 Wis. 2d 769, 786, 530 N.W.2d 392 (Ct. App. 1995) (appellate court need not consider "amorphous and insufficiently developed" argument).

¶ 13. Thus, the real issue simply is whether "Discover Wisconsin Super Sports" satisfied the statutory criteria, under WIS. STAT. § 100.16(2), to qualify for the exemption, under WIS. STAT. § 945.01(5)(b)2.g, from the definition of "lottery" under WIS. STAT. § 945.01(5)(a). Notably, the State tacitly concedes Bohrer's "strict adherence to the technical details of § 100.16(2)(a)-(g),"

and fails to identify any way in which "Discover Wisconsin Super Sports" did not satisfy the statutory criteria. Instead, while still arguing that the game "does not fit the in-pack chance promotion exception found in § 100.16(2)," the State merely maintains, once again, that Bohrer is not selling "genuine products sold at regular retail prices" and, therefore, that the games simply "are designed to allow purchasers to conduct an illegal lottery."

¶ 14. The State, however, offers nothing to explain why Bohrer's milkcaps are not "genuine products." After all, as Bohrer reasonably responds:

> [WISCONSIN STAT.] § 100.16(2) simply does not have such a requirement. Even assuming[,] *arguendo,* that such a non-enforceable requirement existed under the statute, Wisconsin Souvenir's collectable milkcaps clearly meet any reasonable definition of an actual or genuine product. Wisconsin Souvenir's collectable milkcaps can be used in the children's game pog, and can be maintained in collections.[9]

(Footnote added.) Thus, Bohrer contends, the State's argument depends on reading additional, unstated requirements into the statute. Bohrer is correct. Indeed, the State offers nothing to counter Bohrer's assertion that "Discover Wisconsin Super Sports" has "followed the identical guidelines and ... complied with the statutory exception" under which several major companies have generated their promotional games. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.,* 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted argument deemed admitted).

---

[9] The record includes substantial and, for the most part, undisputed documentary evidence that milkcaps are collectable and valuable.

¶ 15. As we recently reiterated:

> It has long been held that the purposes of the [Uniform Declaratory Judgments] Act are furthered by authorizing the [circuit] court to take jurisdiction at a point in time that may be earlier than it would ordinarily do so. And in so doing, the Act provides relief, that is to some degree, anticipatory or preventive in nature.

*Juneau County v. Courthouse Employees*, 216 Wis. 2d 284, 293, 576 N.W.2d 565 (Ct. App.), *aff'd,* 221 Wis. 2d 630, 585 N.W.2d 587 (1998). Moreover, the Act "is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." Wis. Stat. § 806.04(12). Where a company complies with Wisconsin's laws governing in-pack chance promotions, it is entitled to declaratory judgment and injunctive relief protecting it from governmental interference with the promotions. *See Coca-Cola*, 106 Wis. 2d at 172. Accordingly, we conclude that the circuit court was correct in granting Bohrer the requested relief.[10]

---

[10] In its reply brief, the State for the first time also argues that if the statutory in-pack-chance-promotion exception applies, then Bohrer has not complied because "the specific requirements of [Wis. Stat.] §§ 100.16(2)(a)-(f) make it apparent that the 'free' contest entries must come from the same game as those given to paying entrants." The State then points out that Bohrer has not contended that the free game pieces come from exactly "the same game," but rather, that Bohrer has maintained that he complied with the statute because the free pieces come from "an *identical* set."

*By the Court.*—Judgment affirmed.

Although we need not consider the State's argument, *see A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (appellate court need not address argument raised for first time in reply brief), we briefly do so here because, we believe, the argument is clearly indicative of the unrealistic approach the State has taken in this appeal.

WISCONSIN STAT. § 100.16(2)(a) provides that, to come within the exception for in-pack chance promotions, "[p]articipation" must be "available, free and without purchase of the package, from the retailer or by mail or toll-free telephone request to the sponsor for entry or for a game piece." The declaratory judgment submissions established that Bohrer complied and, indeed, that some of those who requested free game pieces actually won.

The fact that Bohrer maintained a separate set of game pieces with identical odds, specifically in order to fulfill requests for free game pieces and thereby comply with the statute, certainly does not carry Bohrer outside the statutory exception. *See Coca-Cola Bottling Co. of Wis. v. La Follette*, 106 Wis. 2d 162, 164, 316 N.W.2d 129 (Ct. App. 1982) (earlier version of WIS. STAT. § 100.16 not violated by use of specially marked bottlecaps in promotion in which consumers could win money in amounts listed under liners of caps, where caps "were placed in one pool which was then randomly divided into two pools, one for free distribution and the other for actual capping of bottles to be sold to consumers"). Although the State argues that it was "apparent" that the free contest entries must come from the *same* game, the State fails to explain how one could comply with the requirements of WIS. STAT. § 100.16(2)(a) without maintaining a separate supply of game pieces. *See Coca-Cola*, 106 Wis. 2d at 170 ("A court may construe a statute whose meaning is clear if a literal application would lead to an absurd or unreasonable result.").