**MINNESOTA SOUVENIR MILKCAPS, LLC, et al., Appellants,**

v.

**STATE of Minnesota, et al., Respondents,**

**Allied Charities of Minnesota, Intervener.**

No. A04–504.

Court of Appeals of Minnesota.

Oct. 12, 2004.

Donald R. McNeil, Stephen F. Buterin, Coleman, Hull & Van Vliet, PLLP, Minneapolis, MN; and Kevin P. Staunton, Staunton Law Group PLLC, Edina, MN; and A.M. "Sandy" Keith, Dunlap & Seeger PA, Rochester, MN, for appellants.

Mike Hatch, Attorney General, E. Joseph Newton, Assistant Attorney General, St. Paul, MN, for respondents.

Mary B. Magnuson, Jacobson, Buffalo, Schoessler & Magnuson, Ltd., St. Paul, MN, for intervener.

Considered and decided by TOUSSAINT, Chief Judge, Presiding; ANDERSON, Judge; and HALBROOKS, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellants distributed and marketed "milkcaps" with a promotional scratch game. Respondents notified appellants that the promotional game violated Minnesota law prohibiting lotteries. Appellants voluntarily ceased distribution of the milkcaps and brought an action seeking a declaratory judgment that their promotional game was not a lottery. The district court concluded that the promotional game was a lottery. We affirm.

## FACTS

Appellant Wisconsin Souvenir Milkcaps, Inc. (Wisconsin Souvenir) is a Wisconsin corporation that sells milkcaps (also referred to as "pogs"). The milkcaps are marketed in Wisconsin using a promotional game. Wisconsin Souvenir also sells special "collector packets" without the game piece used in the promotional game. In July 2003, Wisconsin Souvenir entered into an agreement with Minnesota Souvenir Milkcaps LLC (Minnesota Souvenir) whereby Minnesota Souvenir would market and distribute a product and game in Minnesota that was virtually identical with the Wisconsin game.

Appellants identify the product as a "milkcap," and it is described as a "removable perforated circle" on a piece of cardboard with "a picture laminated on it." Milkcaps were originally designed for and used to sell milk bottles in the 1940s and 1950s. Vintage milkcaps are thicker than the milkcaps at issue and use printed, rather than laminated, pictures.

Included with the "milkcap" is a scratch game with prizes up to $250. Aside from some cosmetic differences, the only difference between the Minnesota and Wisconsin games is that the Wisconsin game is a pull-tab, rather than a scratch, game.

Each "milkcap" with its associated game piece costs the customer one dollar. Wisconsin Souvenir has produced approximately 3,000,000 milkcaps for use in Minnesota at a production cost of approximately $90,000. Retail outlets purchase a box of milkcaps for $400, and each outlet is responsible for paying $2,480 in prizes.

There is evidence in the record that Wisconsin Souvenir's president and sole shareholder purchased three milkcaps that he produced in 1990, early on in Wisconsin Souvenir's existence, for fifty cents each. One of appellants' witnesses testified that she was aware of milkcaps selling for between $1.50 and $5, but the witness did not differentiate between vintage milkcaps and the replicas at issue here. Respondents' expert witness testified that the milkcaps at issue here are valueless. Respondents' witness also testified that the most he has ever spent on a milkcap was $85 for a very rare milkcap but that he had also recently bought and sold large quantities of more common milkcaps for ten cents apiece and four cents apiece.

In denying appellants' request for declaratory judgment, the district court stated that the milkcaps are not sold as part of a package because a package includes "a legitimate product with an ascertainable value" and that the milkcaps were valueless. This appeal followed.

## ISSUES

I.  Must the product at issue have value to satisfy the requirements of an "in-package chance promotion?"

II. Did the district court clearly err in finding that the milkcaps at issue have no value?

## ANALYSIS

### I.

Appellants argue that the district court improperly imposed a requirement that the product have some kind of value to qualify for non-lottery status. Respondents argue that there is nothing "in-package" about the product because "package" means that there is a product for sale in a package, which, respondents argue, is not the case here.

Minnesota law makes conducting lotteries a misdemeanor. Minn.Stat. § 609.755 (2002). "A lottery is a plan which provides for the distribution of money, property or other reward or benefit to persons selected by chance from among participants some

or all of whom have given a consideration for the chance of being selected." Minn. Stat § 609.75, subd. 1(a) (2002). Thus, a lottery exists if (1) a prize or reward is offered, (2) chance determines who is awarded the prize, and (3) participants pay consideration for the chance to win the prize. *Id.* But an in-package chance promotion is not a lottery if (1) one can participate for "free and without purchase of the package," (2) the permissible methods of participation are free and a "scheduled termination date of the promotion" is listed, (3) retailers are given entry forms so that customers can participate for free, (4) odds of winning are not misrepresented, (5) game pieces are randomly distributed and distribution records are maintained "for at least one year after the termination date of the promotion," (6) "prizes are randomly awarded if game pieces are not used", and (7) the sponsor provides the state with a record of those who were awarded prizes of $100 or more upon request, if the request is made within one year of the promotion's termination date. Minn.Stat. § 609.75, subd. 1(b) (2002).

When a statute is unclear, courts attempt to give effect to the intent of the legislature. Minn.Stat. § 645.16 (2002). Further, "[w]ords and phrases are to be given their ordinary meaning." *State v. Larivee*, 656 N.W.2d 226, 229 (Minn.2003). Wisconsin has a statute that is substantially similar to Minn.Stat. § 609.75, subd. 1(b), but Wisconsin uses the term "in-pack chance promotion" instead of "in-package." *Compare* Wis. Stat. § 100.16(2) (2002) *with* Minn.Stat. § 609.75, subd. 1(b) (using identical language). "Laws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." Minn.Stat. § 645.22 (2002). This means that "when a Minnesota statute is modeled after another state's statute, weight is accorded to the other state's interpretation of the statute." *Larson v. Babcock & Wilcox*, 525 N.W.2d 589, 591 (Minn.App.1994).

The Wisconsin Court of Appeals recently concluded that the Wisconsin version of the game at issue here was not a lottery. *Bohrer v. City of Milwaukee*, 248 Wis.2d 319, 635 N.W.2d 816, 816–22 (2001). In *Bohrer*, the state of Wisconsin argued that there was no real product involved in the game and, thus, the threshold requirement of an in-pack promotion was not met. *Id.* at 821. But no evidence was introduced by the state to support that argument; in fact, the virtually undisputed evidence was that the Wisconsin milkcaps were valuable. *Id.* at 821 n. 9 and accompanying text. Thus, the Wisconsin Court of Appeals rejected the state's argument that no real product existed and concluded that the Wisconsin promotion was not a lottery. *Id.* at 821.

We reach a conclusion different from the *Bohrer* court, and we do so for two reasons: first, *Bohrer* is merely persuasive authority. Second, *Bohrer* was decided based on the failure of the state of Wisconsin to prove its case. *Id.* at 821. Indeed, respondent's counsel vigorously contested issues that went unlitigated in *Bohrer*. Given the crucial nature of the second difference, *Bohrer* is of limited usefulness here.

In light of the disputed facts, the district court is correct that the term "in-package chance promotion" requires coupling the promotion with a legitimate, valuable product. Under Minnesota law, a qualifying promotion is not an exception to the prohibition against lotteries but is, instead, simply not a lottery. Because a lottery is defined, in part, as paying consideration for the chance to play the game, it is not a lottery if the payment is for the purchase of a product instead of the

chance to win. *See* Minn.Stat. § 609.75, subd. 1 (defining a lottery, in part, as "giv[ing] a consideration for the chance of being selected"). Further, the term "in-package" must have meaning. *See* Minn. Stat. § 645.16 (2002) ("Every law shall be construed, if possible, to give effect to all its provisions."). Logically, the term "in-package" means the package in which a product is kept for sale.

The district court properly interpreted "in-package chance promotion" to require an offer for the sale of a legitimate, valuable product. The term "in-package" at least implies that there is a real product for sale to which a chance promotion is added. Moreover, appellants' argument is inconsistent with the definition of lottery because appellants' contention would allow participants to pay almost all of their consideration for the chance to play a lottery with little consideration exchanged for the product. Further, appellants' argument effectively eviscerates the lottery prohibition. Thus, the district court did not err in interpreting the statutory term "in-package" to require that there be a legitimate product for sale.[1]

## II.

■ Appellants argue that, even if the statute requires an offer of a legitimate and valuable product, the milkcaps are legitimate and valuable and that the district court clearly erred in finding to the contrary. Findings of fact are only reversed if they are clearly erroneous. Minn. R. Civ. P. 52.01. Findings of fact are clearly erroneous only if there is not "reasonable evidence to support" them. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999).

■ Here, the district court's finding that these milkcaps do not have value is reasonably supported by the record and is not clearly erroneous. By any objective standard, these milkcaps have little value. It costs approximately $90,000 to produce approximately 3,000,000 "milkcaps," which is approximately three cents per "milkcap." Retail outlets purchase a box of 3,600 milkcaps for $400, which is approximately eleven cents per "milkcap." But perhaps most persuasively, retailers pay $2,480 per box for prizes; stated differently, the cost to the retailers for prizes is approximately seven times the purchase cost of the product. There was also expert testimony that these objects are not even milkcaps and currently have no value as collectibles. Finally, there was expert testimony that vintage milkcaps, milkcaps originally used to cap bottled milk, are typically bought for as little as ten cents per milkcap or less. While there was some limited contrary evidence regarding the valuation of these "milkcaps," the district court did not clearly err in concluding that these milkcaps were worthless.

## DECISION

The district court properly determined that for a promotion to qualify as an "in-package change promotion," it must include in the package a legitimate, valuable product, and the district court did not clearly err in finding the milkcaps in this case have no value.

**Affirmed.**

---

1. Both appellants and respondents cite *Albert Lea Amusement Corporation v. Hanson*, 231 Minn. 401, 43 N.W.2d 249 (1950), and *State v. Schubert Theatre Players Co.*, 203 Minn. 366, 281 N.W. 369 (1938). Those cases are of only minimal value because they are factually very dissimilar from the case at bar and, more importantly, because they both predate the "in-package chance promotion" provision of the statute.