# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2018AP947

†Petition for review filed

Complete Title of Case:

### QUICK CHARGE KIOSK LLC AND JEREMY HAHN,

#### PLAINTIFFS-APPELLANTS,

#### V.

### JOSH KAUL , IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL,

#### DEFENDANT-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | August 13, 2019 |
| Submitted on Briefs: | March 1, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Brash, P.J., Brennan and Dugan, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Ohioma Emil Ovbiagele* and *Samantha Huddleston* in Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent, the cause was submitted on the brief of *Brad D. Schimel* and *Colin T. Roth of the Wisconsin Department of Justice* in Madison. |

2019 WI App 51

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**August 13, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP947**

**STATE OF WISCONSIN**

Cir. Ct. No. **2016CV6655**

**IN COURT OF APPEALS**

---

QUICK CHARGE KIOSK LLC AND JEREMY HAHN,

   PLAINTIFFS-APPELLANTS,

   V.

BRAD SCHIMEL, IN HIS OFFICIAL CAPACITY
AS ATTORNEY GENERAL,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Milwaukee County: JOHN J. DiMOTTO, Judge. *Affirmed*.

Before Brash, P.J., Brennan and Dugan, JJ.

¶1    DUGAN, J.  Quick Charge Kiosk LLC and Jeremy Hahn (collectively Quick Charge) appeal the trial court's order granting the Attorney General's motion for summary judgment declaring that Quick Charge's "cell

phone charging machines" (Machines), also referred to as cell phone charging kiosks, constituted illegal gambling machines.[1]  We agree with the trial court's determination and, therefore, affirm.

## BACKGROUND

¶2    In 2014 Hahn founded Quick Charge, which operates the Machines and places them in retail establishments throughout the State.  The Machines resemble video gambling machines commonly found in casinos or taverns, and they function in same manner.  The Machines and their electronic video displays look similar to those of a mechanical slot machine.  The major components of the Machines are (1) a cabinet structure; (2) electronic parts and associated software; and (3) electronic device charging ports that fit almost all portable electronic devices, including mobile phones and tablets.

¶3    When a customer puts one dollar into the Machine, that customer receives 100 credits to play the video chance game, and one minute of charging time.  A customer who charges an electronic device cannot continue to play the game after the expiration of the charging time, but the customer may cash out any remaining credits by printing out a paper receipt using the Machine's printer and redeeming the receipt for cash at the Machine's site.  The credits are redeemable at the ratio of one dollar per 100 credits, the same rate at which the credits are acquired.  Thus, a customer need not use any game credits while charging a phone and may redeem all the credits for cash when the charging time expires.  For

---

[1] Brad Schimel, the State's Attorney General at the time, filed the motion in his official capacity.

instance, a customer may deposit one dollar in exchange for one minute of charging time and 100 game play credits. When the one minute of charging time expires, the customer may redeem all 100 game play credits for one dollar, effectively receiving one free minute of cell phone charging. A customer may also play the video chance game without connecting an electronic device for charging. The Machines also have a random number generator that determines if a player wins and, if so, the amount the player wins.

¶4      Based on an Attorney General opinion that the Machines are unlawful gambling machines, the City of Greenfield ordered Quick Charge to remove three Machines from a retail location in Greenfield. In Brown County, representatives of the State obtained a search warrant for removal of the Machines based on a probable cause finding that the Machines were illegal gambling machines.

¶5      In August 2016, Quick Charge filed an action in Milwaukee County Circuit Court seeking declaratory judgment that its Machines complied with the "in-pack chance promotion" statute, WIS. STAT. § 100.16 (2017-18),[2] and that they did not violate Wisconsin's gambling statutes found in WIS. STAT. ch. 945. Thereafter, the Attorney General filed a summary judgment motion seeking an order declaring that the Machines are unlawful gambling machines under WIS. STAT. § 945.01(3). Quick Charge filed a cross motion for summary judgment seeking an order declaring that its Machines and promotional games complied

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

with the "in-pack chance promotion" exception, and, therefore, did not violate Wisconsin's gambling statutes.

¶6    The trial court heard oral arguments from the parties on the summary judgment motions and then issued a written decision granting the Attorney General's summary judgment motion.  The trial court held that the Machines do not comply with the "in-pack chance promotion exception" in WIS. STAT. § 100.16(2); that the exception does not apply to WIS. STAT. § 945.01(3), the gambling machine subsection; and that the Machines are "gambling machines" pursuant to § 945.01(3) and violate WIS. STAT. ch. 945.  This appeal follows.

## DISCUSSION

¶7    Quick Charge argues that its Machines are lotteries, not gambling machines, under WIS. STAT. § 945.01(5) (the lottery subsection) and WIS. STAT. § 100.16(2).  It asserts that the Machines do not involve consideration under the lottery subsection because its machines use in-pack chance promotions, which the lottery subsection exempts from its definition of consideration.  It further argues that, because exempted lotteries do not constitute gambling, the Machines cannot be deemed to be gambling machines.

¶8    The Attorney General argues that because the lottery definition in WIS. STAT. § 945.01(5) explicitly references the in-pack chance promotion of WIS. STAT. § 100.16(2), the chance promotion exception only applies to lotteries.  He further argues that the in-pack chance promotion exception does not apply to the definition of consideration in § 945.01(3) because the gambling machine subsection does not include any reference to § 100.16(2).  He argues that because the Machines are gambling machines they are illegal.

4

¶9     As we further explain, we agree with the Attorney General.

**I.     Standard of review and principles of statutory construction**

¶10     Whether summary judgment has been properly granted is a question of law which we review *de novo*, applying the same methodology as the trial court, but benefiting from its analysis.  *See **Eichenseer v. Madison-Dane Cty. Tavern League, Inc.***, 2008 WI 38, ¶30, 308 Wis. 2d 684, 748 N.W.2d 154.  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* WIS. STAT. § 802.08(2).

¶11     Here, the parties disagree over the interpretation and application of WIS. STAT. §§ 945.01(3), 945.01(5), and 100.16(2) which involves questions of law involving statutory interpretation.  "Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute.  We assume that the legislature's intent is expressed in the statutory language."  *See **State ex rel. Kalal v. Circuit Ct. for Dane Cty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.  Thus,

> statutory interpretation begins with the language of the statute.  If the meaning of the statute is plain, we ordinarily stop the inquiry.  Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.

*See id.*, ¶45 (citation omitted); *see also* WIS. STAT. § 990.01(1).  "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."  ***Kalal***, 271 Wis. 2d 633, ¶46.

## II. The Machines qualify as illegal gambling machines under WIS. STAT. § 945.01(3)(a); they are not exempted lotteries under § 945.01(5) and WIS. STAT. § 100.16(2)

### A. The statutory scheme

¶12    WISCONSIN STAT. § 945.01 prohibits various forms of gambling. Each prohibition is located in its own statutory subsection that defines the specific prohibited activity.  As relevant to this appeal, § 945.01(3) defines a gambling machine and § 945.01(5) defines a lottery.[3]  Also relevant is WIS. STAT. § 100.16, part of WIS. STAT. ch. 100, which regulates "Marketing; Trade Practices."  Section 100.16 prohibits selling anything with a pretense of a prize, with the exception of "in-pack chance promotions" as described in § 100.16(2).[4]

*Gambling machine definition—WIS. STAT. § 945.01(3)*

¶13    WISCONSIN STAT. § 945.01(3)(a) establishes the following four elements of a gambling machine:    (1) "a contrivance"; (2) "which for a consideration"; (3) "affords the player an opportunity to obtain something of value"; and (4) "the award of which is determined by chance, even though

---

[3] WISCONSIN STAT. § 945.02 is the statute that makes gambling illegal.  The statute states, "Whoever does any of the following is guilty of a [crime]:  (1) Makes a bet; or (2) Enters or remains in a gambling place with intent … to participate in a lottery, or to play a gambling machine; or (3) Conducts a lottery[.]"  WISCONSIN STAT. § 945.03 prohibits commercial gambling and WIS. STAT. § 945.04 prohibits permitting premises to be used for commercial gambling.

The Attorney General points out an apparent anomaly by which Wisconsin taverns appear to freely operate gambling machines and indicates that this anomaly can be explained by WIS. STAT. § 175.38.  This statute only allows Wisconsin Department of Revenue special agents to enforce the video gambling prohibition in taverns and forbids its enforcement by any other State or local law enforcement officers.  *See id.*

[4] WISCONSIN STAT. § 100.16(2) lists seven criteria, all of which must be met in order for a promotion to constitute an "in-pack chance promotion."

accompanied by some skill and whether or not the prize is automatically paid by the machine." Notably, this subsection does not define "consideration" and it includes only three exceptions: (1) bingo machines; (2) machines that only reward a player with nonredeemable free replays;[5] and (3) skill-based amusement devices that award novelty prizes. *See* § 945.01(3)(b)1.-3. None of those exceptions apply to this case. We also note that the gambling machine definition does not reference the in-pack chance promotion found in WIS. STAT. § 100.16(2).

*Lottery definition —WIS. STAT. § 945.01(5)*

¶14 Separate from the gambling machine definition, WIS. STAT. § 945.01(5)(a) establishes the following four elements of a lottery: (1) "an enterprise"; (2) "wherein for a consideration"; (3) "the participants are given an opportunity to win a prize"; and (4) "the award of which is determined by chance, even though accompanied by some skill." The lottery subsection, § 945.01(5)(b)1. has its own special definition of the term "consideration" as follows:

> "Consideration" *in this subsection* means anything which is a commercial or financial advantage to the promoter or a disadvantage to any participant, but does not include any advantage to the promoter or disadvantage to any participant caused when any participant learns from newspapers, magazines and other periodicals, radio or television where to send the participant's name and address to the promoter.

(Emphasis added.) Moreover, § 945.01(5)(b)1. specifically limits its definition of consideration to the lottery subsection, stating "*consideration in this subsection*

---

[5] Nonredeemable free replays reward a player for achieving certain scores and do not change the ratio or record the number of free replays that are awarded. *See* WIS. STAT. § 945.01(3)(b)2.

*means ….*" (emphasis added).  The lottery subsection exempts certain activities from its definition of consideration and limits the exemptions to the lottery subsection.  It states that "none of the following constitutes *consideration under this subsection* … [u]sing a chance promotion exempt under s. 100.16(2)."  *See* § 945.01(5)(b)2.g. (emphasis added).  We point out that the gambling machine definition does not define consideration and, unlike § 945.01(5), does not provide an exemption for an in-pack "chance promotion exempt under s. 100.16(2)."  *See* § 945.01(3).

*Prohibition of sales with the pretense of a prize—*WIS. STAT. *§ 100.16*

¶15    WISCONSIN STAT. § 100.16(1) prohibits the sale of anything using the pretense that the purchaser may win a prize and states as follows:

> No person shall sell or offer to sell anything by the representation or pretense that a sum of money or something of value, which is uncertain or concealed, is enclosed within or may be found with or named upon the thing sold, or that will be given to the purchaser in addition to the thing sold, or by any representation, pretense or devise by which the purchaser is informed or induced to believe that money or something else of value may be won or drawn by chance by reason of the sale.

As previously mentioned, § 100.16(2) includes an exception to that prohibition.  It states that "[t]his section does not apply to an in-pack chance promotion" if seven conditions are met.  As we further explain, based on this language, the exception in § 100.16(2) *only* applies to § 100.16 unless another statute specifically incorporates it by reference.  Here, the lottery subsection specifically incorporates the exception for in-pack chance promotions—the gambling machine subsection does not.

**B. The definition of "consideration" for a gambling machine is not the same as the definition of "consideration" for a lottery**

¶16    As we stated above, four elements are required to establish a gambling machine under WIS. STAT. § 945.01(3)(a):   (1) "a contrivance"; (2) "which for a consideration"; (3) "affords the player an opportunity to obtain something of value"; and (4) "the award of which is determined by chance, even though accompanied by some skill and whether or not the prize is automatically paid by the machine."   Quick Charge does not dispute that its Machines satisfy three out of four elements; that is, they are contrivances that afford the player an opportunity to obtain something of value, as determined by chance.  Rather, Quick Charge argues that its Machines do not afford a player an opportunity to obtain something of value "for a consideration"—the second statutory element for a gambling machine.

*Quick Charge's argument regarding "consideration" for a gambling machine*

¶17    Quick Charge acknowledges that WIS. STAT. § 945.01(2)(a), the definition of a gambling machine, does not define consideration for the purposes of § 945.01.   However, it argues that the gambling machine definition of consideration must not be read in a vacuum and must be read in conjunction with the lottery subsection's statutory definition of consideration.  It further argues that the gambling machine and the lottery definitions mirror one another, but for two words—"contrivance" and "enterprise."

¶18    Quick Charge further argues that when two separate statutes interact, rules of statutory interpretation require that courts reasonably construe the statutes

to avoid a conflict. It argues that the only reasonable interpretation of the meaning of consideration, under both the lottery and gambling machine definitions, is that "consideration" must have an identical meaning in both subsections of WIS. STAT. § 945.01, and that "it would be absurd for the term 'consideration' to mean one thing when defining a 'gambling machine' and another when defining gambling activity such as 'lottery.'" Quick Charge then argues that, because WIS. STAT. § 100.16(2) applies to lotteries, it must also apply to gambling machines. It notes that the lottery subsection defines consideration as explicitly excluding an in-pack chance promotion exception under § 100.16(2). It then contends that because its Machines involve an in-pack chance promotion they do not involve consideration and, therefore, its Machines are not illegal gambling machines.

¶19 The problem with Quick Charge's argument is that it contravenes the principles of statutory construction. Our supreme court has emphasized that "[i]n construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute." *See **Kalal***, 271 Wis. 2d 633, ¶46 (citation omitted). Quick Charge concedes that the gambling machine subsection, WIS. STAT. § 945.01(3), does not reference WIS. STAT. § 100.16(2) as an exception to consideration. However, rather than apply a plain language interpretation of § 945.01(3), Quick Charge argues that this court should, in essence, incorporate part of the lottery subsection into the gambling machine subsection. We are not persuaded.

¶20 Looking at the structure of WIS. STAT. § 945.01, we can see that the subsections for a gambling machine and a lottery are separate and distinct. Each is located in its own specific subsection—§ 945.01(3) and § 945.01(5). Each subsection uses different words—a "contrivance" for a gambling machine and an "enterprise" for a lottery. Unlike the gambling machine subsection, the lottery

subsection specifically defines the term "consideration" and provides exceptions to that definition including the "in-pack chance promotion" found in WIS. STAT. § 100.16(2). Furthermore, the specific language used in the lottery subsection— "consideration *in this subsection* means"—limits the application of that definition of consideration to the lottery subsection. *See* § 945.01(5)(b)1. (emphasis added).

¶21　Further, the language limiting the exceptions to "consideration in this subsection" in WIS. STAT. § 945.01(5) reflects the legislative intent not to apply that exception to any other subsections of Chapter 945. "We assume that the legislature's intent is expressed in the statutory language." *See **Kalal***, 271 Wis. 2d 633, ¶44. We conclude that given the differences in the plain language of the gambling machine subsection and the lottery subsection, this court cannot simply take an exception expressly limited to a lottery and apply it to gambling machines. Applying the exception to another subsection ignores that limiting language and requires reading that limiting language out of the statute, which is contrary to statutory principles. *See **id.***, ¶46. In selecting the wording of the different subsections, the legislature indicated that it knew when it wanted to provide a specific meaning for consideration and when it wanted to provide exceptions to that meaning. Clearly, the legislature intended to treat the gambling machine subsection differently than the lottery subsection. Our interpretation is consistent with the statutory structure.

¶22　In sum, a plain language interpretation of WIS. STAT. § 945.01(5) and § 945.01(3) prohibits incorporating WIS. STAT. § 100.16(2) into the gambling machine subsection when determining whether the Machines involve consideration under the gambling machine subsection. Thus, we conclude that the definition of consideration found in the gambling machine subsection is different than the definition of consideration in the lottery subsection. Based on similar

reasoning, we also conclude that the in-pack chance promotion found in § 100.16(2) does not apply to gambling machines under § 945.01(3).[6]

> *The Machines involve "consideration" for purposes of the gambling machine subsection*

¶23    We next address whether the Machines involve consideration under WIS. STAT. § 945.01(3)(a).    As noted, that subsection does not define consideration.    Consequently, we apply the term's ordinary definition of "something given as recompense" as a "payment or reward." *See Consideration*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE (unabr. 1993).

¶24    The trial court noted that Quick Charge made a brief argument that its Machines are not gambling machines even if they do not qualify for the in-pack chance promotion exemption.    On appeal, Quick Charge does not make that argument and, therefore, has abandoned it. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).[7]

¶25    Instead, Quick Charge pursues an alternative argument that the Machines are lotteries, not gambling machines.    In addressing this issue, Quick Charge discusses whether its Machines meet the definition of consideration under

---

[6] WISCONSIN STAT. § 945.01(3) does not reference, let alone incorporate, WIS. STAT. § 100.16(2).

[7] If Quick Charge does make an independent argument that the Machines do not involve consideration under the gambling machine subsection even if the in-pack chance promotion does not apply to the gambling machine subsection, it does not develop such argument.  We need not address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

the lottery subsection.  It asserts that its Machines do not involve consideration under the lottery subsection because its Machines use in-pack chance promotions, which the lottery subsection exempts from its definition of consideration.  To qualify for the exemption as an in-pack chance promotion, the promotion must meet seven conditions, including the option for free play.  *See* WIS. STAT. § 100.16(2)(a).  Quick Charge argues that its machines provide a free play option that fulfills the requisite condition to qualify as an exempt in-pack chance promotion.[8]

¶26    The Attorney General responds that Quick Charge's argument about its free play option is absurd.  However, the Attorney General has misconstrued the argument.

¶27    In fact, Quick Charge does not attempt to refute the Attorney General's argument that if the in-pack chance promotion in WIS. STAT. § 100.16(2) does not apply to the gambling machine subsection, the Machines fulfill the definition of consideration in the gambling machine subsection.  Rather, Quick Charge argues that, even if this court reads the gambling subsection and the lottery subsection independently, the Machines cannot be deemed gambling machines.  It asserts that the Machines are merely devices used to conduct a

---

[8] Quick Charge explains that its promotion—the opportunity to win a cash prize—has been designed to afford individuals the opportunity to participate in an in-pack chance promotion as that term is defined in WIS. STAT. § 100.16(2).  It states that the promotion is available to all individuals who desire to participate free and without purchase of any charging time.  Such individuals must fill out an entry form to request a free play from Quick Charge.  Quick Charge sends one free play voucher for each entry sent in by mail.  Individuals may redeem the free play voucher with the retailer to access the promotion for free.  Each voucher provides participants with 100 credits to play.  Quick Charge also provides entry forms at Machine locations, and certain Machines allow individuals to print off entry forms.

lottery. It then argues that the "removal of consideration through a[n in-pack] chance promotion in compliance with § 100.16(2) precludes a contrivance used in a lottery from becoming a gambling machine."

¶28     Quick Charge's argument is not that the free play option removes the Machines from the definition of a gambling machine. Rather, it argues that the Machines constitute a lottery not a gambling machine. It then argues that the lottery subsection's definition of consideration incorporates the exemption for in-pack chance promotions of WIS. STAT. § 100.16(2). Thus, Quick Charge's argument that the Machines do not include consideration is based on its arguments that the Machines are lotteries and, because they involve in-pack chance promotions, they do not involve consideration and, therefore, they are not illegal lotteries.

¶29     Thus, we conclude that Quick Charge's Machines involve consideration for the purposes of the gambling machine subsection because, as noted above, the in-pack chance promotion exemption does not apply to gambling machines. We next discuss whether Quick Charge's Machines constitute gambling machines or a lottery.

### C. Quick Charge's machines are gambling machines, not a lottery

¶30     As noted above, Quick Charge argues that its Machines are lotteries, rather than gambling machines. In Quick Charge's view, the Machines can use the lottery exception for in-pack chance promotions and, as a result, they are not prohibited lotteries.

14

¶31    Chapter 945 of the Wisconsin Statutes defines a gambling machine and a lottery differently. WISCONSIN STAT. § 945.01(3) states that "a contrivance" can be an unlawful gambling machine, while § 945.01(5) says that "an enterprise" can be an unlawful lottery. When the legislature chooses to use two different words, this court generally considers each separately and presumes that different words have different meanings. *See Augsberger v. Homestead Mut. Ins. Co.*, 2014 WI 133, ¶17, 359 Wis. 2d 385, 856 N.W.2d 874. Accordingly, the words contrivance and enterprise must be given different meanings.

¶32    The statute does not define either term and, therefore, we look to dictionary definitions. *See Kalal*, 271 Wis. 2d 633, ¶53. The dictionary defines a "contrivance" as a "mechanical device," and an "enterprise" as an "undertaking that … has a strong element of risk." *See Contrivance*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabr. 1993); *see Enterprise*, *id.* Therefore, machines—mechanical devices—can be a "gambling machine." This interpretation is supported by prior decisions applying the gambling machine provision to machines, analyzing a video poker machine as a gambling machine and a pinball machine as a gambling machine. *See State v. Hahn*, 221 Wis. 2d 670, 679, 586 N.W.2d 5 (Ct. App. 1998) (applying the subsection to video poker machines); *State v. Lake Geneva Lanes, Inc.*, 22 Wis. 2d 151, 153, 125 N.W.2d 622 (1963) (applying the subsection to a pinball machine). By contrast, traditional prize drawings or other non-mechanical schemes—an enterprise—can be a lottery (i.e., pull tab contests as a lottery.) *See Bohrer v. City of Milwaukee*, 2001 WI App 237, ¶¶2-3, 248 Wis. 2d 319, 635 N.W.2d 816.

¶33    Quick Charge responds that this definition of contrivance is too narrow and that it should be read to mean "a thing that has some intended purpose." The Attorney General argues that such interpretation cannot be correct

15

for two reasons. First, WIS. STAT. § 945.01(3) is titled "gambling machine" and refers to a "machine" in multiple places, which indicates that the term "contrivance" should be given a definition that encompasses only machines. While a heading is not part of a law, it can be persuasive in the interpretation, given the statute. *See* ***State v. White***, 180 Wis. 2d 203, 213, 509 N.W.2d 434 (Ct. App. 1993). Moreover, the last element of a "gambling machine," is an "award … determined by chance … whether or not the prize is automatically paid *by the machine*." *See* § 945.01(3)(a) (emphasis added). We conclude that these express references to "machine" mean that a "contrivance" should be interpreted to mean machine-like devices.

¶34 The gambling machine and lottery subsections are strikingly similar. Aside from the differences related to "consideration," the only meaningful difference is that a gambling machine is a contrivance, while a lottery is an enterprise. The only way to give effect to both provisions is to give those two terms different meanings. Quick Charge's preferred reading would effectively give them the same meaning, improperly rendering one or the other surplusage. "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." ***Kalal***, 271 Wis. 2d 633, ¶46. When the legislature chooses to use two different words, this court generally considers each separately and presumes that different words have different meanings. *See* ***Augsberger***, 359 Wis. 2d 385, ¶17.

¶35 "We assume that the legislature's intent is expressed in the statutory language." *See* ***Kalal***, 271 Wis. 2d 633, ¶44. Given the plain language differences between the gambling machine subsection and the lottery subsection, we conclude that the legislature intended to treat the gambling machine subsection differently than the lottery subsection. This interpretation is the one that is the most

consistent with the statutory structure. Thus, we conclude that Quick Charge's Machines are gambling machines, not lotteries.[9]

**CONCLUSION**

¶36 For the reasons explained above, we conclude that the definition of "consideration" in WIS. STAT. § 945.01(3) for a gambling machine is different than the definition of "consideration" in § 945.01(5) for a lottery; the in-pack chance promotion exception found in WIS. STAT. § 100.16(2) does not apply to gambling machines under § 945.01(3); the Machines involve consideration for purposes of § 945.01(3) regarding gambling machines; and the Machines are gambling machines, not a lottery. Thus, the Machines are illegal gambling machines under § 945.01(3).

*By the Court.*—Order affirmed.

---

[9] Quick Charge also argues that the Machines meet all seven conditions of the in-pack chance promotion exception of WIS. STAT. § 100.16(2) and, therefore, the Machines are exempt lotteries. The Attorney General argues that the Machines do not meet those conditions.

We have concluded that the Machines are gambling machines and that WIS. STAT. § 100.16(2) does not apply to gambling machines. Thus, we need not address this issue.

17